**In re Petition for DISCIPLINARY ACTION AGAINST Jerome J. HOLMAY, an Attorney at Law of the State of Minnesota.**

No. C6–86–1442.

Supreme Court of Minnesota.

Jan. 18, 1991.

Patrick Burns, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Jerome J. Holmay, St. Paul, for respondent.

PER CURIAM.

This matter comes to us for disposition based on the referee's report finding that respondent Jerome J. Holmay practiced law while on restricted status; that he misrepresented his compliance with rules governing restricted status practice to the Director of the Office of Lawyers Professional Responsibility; and that he procured improper notarizations on documents. These findings are deemed conclusive as no transcript of the referee's hearing has been ordered. Rule 14(d),

Rules on Lawyers Professional Responsibility (RLPR). The referee recommends indefinite suspension with a minimum of 3 years. We conclude that a minimum of 18 months' suspension best fits the facts and circumstances of this case.

In June 1988 respondent drafted a will for a client. Respondent and his secretary witnessed the signing of the will and its acknowledgment by the client. The next day respondent directed his secretary to have the will and acknowledgment notarized by Robert Travers, who had not witnessed the signing. This is not the first time respondent has used a notary to notarize a document which had been executed outside of the notary's presence. Indeed, respondent was disciplined for similar conduct before. *In re Holmay*, 399 N.W.2d 564 (Minn.1987). At the hearing, respondent testified he has used a notary in this fashion a number of times.

The referee also found respondent violated the Continuing Legal Education Rules by practicing beyond the scope allowed attorneys on restricted status. Rule 3, R.Sup.Ct.C.L.E. (legal representation is limited to certain immediate family members). During the period from December 1988 to December 1989, while respondent was on restricted status for failure to fulfill his CLE requirements, he represented at least 15 clients (none related to him) in various matters including divorce, probate, and real estate matters.

On two occasions the Director requested respondent to furnish affidavits detailing the extent of his practice while on restricted status. The referee found that respondent intentionally made false statements in these affidavits. In the first affidavit respondent claimed his restricted practice had been limited to an informal probate proceeding, volunteer legal services, and two consultations. In his second affidavit, respondent claimed to have complied with the limitations for attorneys on restricted status. As noted above, respondent in fact had handled some 15 different legal matters.

The false notarization of documents is a matter of concern to this court. *In re Finley*, 261 N.W.2d 841, 845–46 (Minn. 1978). Often, as in this case, no fraudulent intent is involved, but the attorney simply finds it more convenient to have a notary notarize papers when the parties have not in fact appeared before the notary. Once an attorney starts on this slippery slope of taking shortcuts, the danger is that it frequently leads to increasingly sloppy work and perhaps problems with serious legal consequences. In short, the misuse of a notary undermines the integrity of the legal system. *In re Danna*, 403 N.W.2d 239, 241 (Minn.1987).

Recently we put the bar on notice that failure to comply with CLE requirements was a serious matter meriting discipline. *See In re Beman*, 451 N.W.2d 647, 648 (Minn.1990). In *In re Seng*, 462 N.W.2d 597 (Minn.1990), we ordered a 1–year suspension for an attorney who represented clients in a real estate matter while on restricted status. As our rules state: "It is of primary importance to the members of the Bar and to the public that attorneys continue their legal education throughout the period of their active practice of law." Rule 1, R.Sup.Ct.C.L.E.

The most serious aspect of this case is respondent's affidavits in which he intentionally misrepresented the scope of his practice while on restricted status. It is important that a lawyer's word, and certainly his sworn word, be trusted. *See* Minn.R.Prof.Conduct 8.4(c). Here that trust was betrayed.

In this case, no harm to clients has ensued. No signatures have been forged. There has been no attempt to defraud anyone. No monies were involved. Nevertheless, respondent has engaged in unacceptable shortcuts and then attempted by evasion and misleading affidavits to cover up his deficiencies. Moreover, respondent has a history of disciplinary problems. He was earlier suspended for 30 days for signing his clients' signatures on court documents, having the documents notarized, and submitting them to the court. *In re Holmay*, 399 N.W.2d at 565. Prior to this suspension, respondent had also received two private admonitions for neglect of

client matters and failure to communicate with clients.

In determining the appropriate sanction in cases involving multiple disciplinary violations, we look to the nature of the misconduct involved, the number and egregiousness of the violations, and the harm to the public and profession. *In re Isaacs*, 406 N.W.2d 526, 529 (Minn.1987). We have ordered an indefinite suspension of a minimum of four years where an attorney attempted to defraud a client and perjured himself and fabricated evidence in the subsequent disciplinary proceeding. *In re Bernstein*, 404 N.W.2d 804, 805 (Minn. 1987). Yet, we deemed a 1-year suspension more appropriate where an attorney neglected client matters and failed to cooperate with the Office of Lawyers Professional Responsibility in the resulting disciplinary action. *In re Jensen*, 418 N.W.2d 721 (Minn.1988).

We recognize that suspension for any amount of time is a harsh sanction, particularly for a sole practitioner who does not have other firm members to handle his or her files during the suspension period. Nevertheless, while we feel 3 years' suspension is too long, we believe, particularly in view of respondent's past cumulative disciplinary record, that there must be a minimum suspension of 18 months. Consequently,

1. Respondent is suspended indefinitely from the practice of law and he may not apply for reinstatement for 18 months.
2. Respondent shall comply with Rule 18(e), Rules on Lawyers Professional Responsibility, prior to his reinstatement.
3. Respondent shall pay to the Director of the Office of Lawyers Professional Responsibility $750 in costs prior to reinstatement.

IT IS SO ORDERED.

GARDEBRING, J., took no part in the consideration or decision of this case.