In re Petition for DISCIPLINARY AC-TION AGAINST Raymond C. LALLIER, an Attorney at Law of the State of Minnesota.

No. C8–95–2065.

Supreme Court of Minnesota.

Nov. 21, 1996.

Marcia A. Johnson, Director of Office of Lawyers Professional Responsibility, Craig D. Klausing, Assistant Director, St. Paul, for appellant.

Michael J. Hoover, Minneapolis, for respondent.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) petitions this court to take disciplinary action against

respondent Raymond C. Lallier (Lallier) alleging unauthorized practice of law in state court, lack of diligence in attending to client affairs, noncooperation with the Director's office, and failure to attend a pre-hearing conference. The Honorable Michael H. Seibel, as referee, concluded that Lallier held himself out as being authorized to practice law in state court while suspended from practice for failure to regularly pay the annual attorney registration fee and while restricted from practice for failure to file the required affidavit evidencing completion of his continuing legal education (CLE) requirement. The referee also concluded that Lallier failed to cooperate with the investigatory efforts of the Director's office.[1] The referee recommended that Lallier be suspended from the practice of law in Minnesota for 180 days.

Because Lallier ordered a transcript of the hearing, the referee's findings of fact and conclusions of law are deemed not conclusive, pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility.[2]

The referee made the following findings:

Lallier was admitted to practice law in Minnesota on April 20, 1979, and later was admitted to practice in the United States District Court for the District of Minnesota based upon his authorization to practice before this court. Lallier failed to comply with the state bar requirement that he submit proof of attendance at 45 hours of approved CLE prior to June 30, 1985. On November 20, 1985, this court issued an order placing him on CLE restricted status.[3] Lallier remained on CLE restricted status until January 13, 1995.

Between December 1984, and May 1986, Lallier worked for the Federal Deposit In-

surance Guarantee Corporation in Chicago, and was not present in Minnesota. In May 1986, he returned to Minnesota and joined the Minneapolis law firm of Fredrikson & Byron. Lallier did not inform the firm that he was on CLE restricted status. There was no agreement with the firm limiting Lallier's practice to non-state court matters, there was no indication on the firm letterhead that he was not authorized to practice in Minnesota state court, and the firm's clients had no reason to know that respondent was not authorized to represent them in state court matters. On July 1, 1987, Lallier failed to pay his attorney registration fee and was automatically placed on fee suspended status. He failed to pay the registration fee and remained on suspended status for the subsequent seven years.

In December 1987, Lallier left Fredrikson & Byron to join the Minneapolis law firm of Mackall, Crounse & Moore. Lallier did not inform the firm that he was fee suspended and on CLE restricted status, and the firm letterhead again did not indicate that he was not authorized to practice law in state court. In July 1991, Lallier became "of counsel" to the law firm of Arnold, Anderson & Dove. Lallier again failed to inform the firm of his status and the letterhead reflected no limitation on his ability to practice law in Minnesota.

## Unauthorized Practice of Law

It is uncontested that due to Lallier's failure to file an affidavit of CLE completion with the Director's office he was placed on CLE restricted status by this court in 1985 and that the restricted status continued until 1995. An attorney on restricted status may not represent any person in any legal matter

---

1. The referee found that Lallier had not been negligent in any of his client representations and we agree that there is no clear evidence of such neglect.

2. The rule provides, in part, that:
   (e) Referee's Findings, Conclusions, and Recommendations. The referee shall make findings of fact, conclusions, and recommendations, file them with this Court, and notify the respondent and the Director of them. Unless the respondent or Director, within ten days, orders a transcript and so notifies this Court, the findings of fact and conclusions shall be conclusive.

3. CLE standards are set out in the Supreme Court Rules for Continuing Legal Education of Members of the Bar. Rule 3 prescribes that an attorney shall complete a minimum of 45 hours of work in courses approved by the State Board of Continuing Education within a three-year period. Failure to file will result in the attorney being placed on "restricted status"—that is, the attorney may not represent a person other than a family member or close relative in any legal proceeding.

other than one involving a family member or close relative. *See* Rule 3, R. Sup.Ct. C.L.E.

It is also uncontested that Lallier failed to pay his attorney registration fees on July 1, 1987, and subsequently for every year through 1994. An attorney who is fee suspended is not authorized to practice law or to in any other manner hold themselves out as qualified or authorized to practice law while in default. *See* Rule 3, Rules for Registration of Attorneys.[4]

The unauthorized practice of law is broadly defined as follows:

Subdivision 1. Prohibitions. It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, to appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or any consideration, to prepare, directly or through another, for an-

other person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.

Minn.Stat. § 481.02, subd. 1 (1994).[5]

The referee's determination that Lallier engaged in the unauthorized practice of law is supported by ample evidence.

### *Louisiana Capital Defense Project*

On August 13, 1986, Lallier wrote to the Louisiana Capital Defense Project indicating that he was a senior associate with the law firm Fredrikson & Byron and was interested in serving as counsel for the death row appeal of Dobie Williams despite being on CLE restricted status. In that letter he stated that, "[i]n order for me to better assess the possibility of serving as counsel for Mr. Williams, it is necessary that you provide me with information regarding the specific level of support with which our firm must provide me while serving as Dobie Williams' attorney." He proceeded to review the transcript of the case, presumably looking for appealable error.

While Lallier contends his contribution to the appeal was limited to reading the briefs, that he made no conclusions of law, gave no legal advice, nor appeared on behalf of Williams, whether he actually appeared in

---

4. The Director alleges that Lallier engaged in the unauthorized practice of law by practicing bankruptcy law in United States District Court. The United States District Courts have a separate system for imposition of discipline and require an attorney to report only public disciplinary actions. D.Minn. LR 83.6(b)(7). By doing so, the district courts have reserved discretion to impose different discipline than that imposed by other jurisdictions. Because Lallier had not been disciplined by the state, the referee properly concluded that his practice in federal district court was not unauthorized. United States District Court for the District of Minnesota, Local Rule 83.6(b)(8) states:

Upon the filing of a certified or exemplified copy of a judgment or order demonstrating that an attorney admitted to practice before this court has been disciplined by another court, this court shall forthwith issue a notice directed to the attorney containing:

(A) a copy of the judgment or order from the other court; and

(B) an order to show cause directing that the attorney inform this court within 30 days after service of that order upon the attorney, personally or by mail, of any claim by the attorney predicated upon the grounds set forth in paragraph (4) hereof that the imposition of the identical discipline by the court would be unwarranted and the reasons therefor.

5. The Director urges the court to consider that the appearance of Lallier's name on the letterhead of the law firms where he was employed while fee suspended or CLE restricted, constitutes additional instances of Lallier's unauthorized practice of law. The referee made no such finding and there is no evidence as to the effect his name appearing on the letterhead had in misleading the public as to his authority to practice law.

court or offered any advice is not determinative of the question whether he engaged in the unauthorized practice of law. The referee concluded that Lallier's conduct in the Louisiana Capital Defense Project suggested that he was eligible and fully prepared to practice law in state court if he was asked to do so, without regard to his restricted status in Minnesota.

### *American Bank of Mankato*

In 1986, Lallier was involved in the representation of the American Bank of Mankato regarding the purchase of loans from the FDIC. The FDIC wrote to Lallier as the attorney handling the loan purchase. Lallier contends that his participation in this matter was solely limited to pending or contemplated bankruptcy proceedings and issues. However, on December 19, 1986, Lallier wrote to the FDIC and stated that, "[h]owever, we agreed that we would not purchase any loans in bankruptcy." The loan purchase was not a bankruptcy matter, was venued in state court, and was approved by a district court judge for the County of Redwood, Minnesota. Furthermore, Lallier's time records indicate that he was representing the American Bank in "general matters" not solely bankruptcy, and he admitted his involvement in non-bankruptcy matters related to this client at the disciplinary hearing.

### *Minneapolis Bank Representation*

In September 1987, Lallier represented a Minneapolis bank in efforts to collect some promissory notes.[6] Lallier again contends that his representation in this matter was strictly limited to pending or contemplated bankruptcy proceedings and issues. As part of this representation, however, in correspondence dated September 23, 1987, while on CLE restricted and fee suspended status, Lallier threatened to exercise all rights of his client "under the security agreements, Minnesota Statutes § 336, and other applicable state laws * * *." This presumably included remedies to be pursued in state court.

6. The name of the Minneapolis bank was not determined by the referee, and the name is of no

### Noncooperation with the Director's Office

■ Noncooperation is a violation of Rule 8.1(a)(3), Minnesota Rules of Professional Conduct, and Rule 25, Rules on Lawyers Professional Responsibility (RLPR). *In re Walker*, 461 N.W.2d 219, 222 (Minn.1990). Rule 25 states in part that:

(a) Lawyer's Duty. It [is the lawyer's duty] to cooperate with * * * the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated.

\* \* \* \* \* \*

(b) Grounds of Discipline. Violation of this Rule is unprofessional conduct and shall constitute a ground for discipline * * *.

The referee's determination that Lallier's failure to respond to the investigatory efforts of the Director's office constituted noncooperation is also supported by ample evidence.

On September 26, 1994, the Director's office received a client complaint concerning Lallier's legal representation. The Director determined the allegations did not warrant discipline, but wrote to Lallier concerning his suspension for nonpayment of attorney fees and his CLE restricted status. The Director asked Lallier whether he had continued to practice law after his suspension and while on restricted status. Lallier did not reply. On October 21, 1994, the Director again wrote to Lallier concerning his fee suspension and CLE restricted status, and again he did not reply to the inquiries.

On November 22, 1994, the Director wrote to Lallier and advised him that failure to cooperate with an investigation by the Director constituted an independent basis for

consequence to this disciplinary action.

disciplinary action; no response was received. On December 7, 1994, and April 27, 1995, the Director again wrote to Lallier requesting a response to its earlier letters. The letter of April 27 was sent by both regular and certified mail with return receipt requested. A signed return receipt was received by the Director on May 1, 1995, but Lallier offered no response to the letter. Lallier openly acknowledges his receipt of these letters and his failure to respond.

On May 3, 1995, a second client complaint was received by the Director regarding Lallier's representation in a bankruptcy matter. On May 12, 1995, the Director sent Lallier a notice of investigation requesting his written response to the complaint within 14 days. In that letter, Lallier was informed that his failure to respond could constitute a separate ground for discipline. Lallier did not submit a response. In a follow-up letter dated June 7, 1995, the Director stated that:

> On May 12, 1995, I wrote to you providing the enclosed notice of investigation. As set out in the notice of investigation, you were to file a written response to the [Schultz] complaint within 14 days. No response to that complaint has been received.
>
> Pursuant to Rule 25, Rules on Lawyers Professional Responsibility, and Rule 8.1(a)(3), Minnesota Rules of Professional Conduct, please respond completely to the complaint, in writing, within five days of this letter. Please be advised that your failure to respond may constitute a separate ground for discipline. *See In re Cartwright,* 282 N.W.2d 548 (Minn.1979).

At the hearing Lallier admitted receipt of the letter, and admitted that he had failed to cooperate with the Director's investigations or to return correspondence for a period of several years. On July 20, 1995, Lallier was mailed charges of unprofessional conduct and a notice of a pre-hearing meeting requiring his attendance. Lallier did not attend the meeting nor did he contact the Director concerning his inability to attend. On August 17, 1995, the Director's Office mailed Lallier

a copy of the Director's motion filed with the Lawyers Professional Responsibility Board Panel requesting authorization to bypass panel proceedings based on respondent's noncooperation. Although he was presented with an opportunity to respond and explain his failure to appear at the pre-hearing meeting, Lallier failed to submit a written response or to contact the Panel Chair or the Director.

■ We now turn to the issue of what discipline is appropriate. In *In re Beman,* we made a special note that the bar "is placed on notice that henceforth we shall consider noncompliance with CLE requirements to be a very serious matter and may well result in more stringent disciplinary sanctions being imposed." 451 N.W.2d 647, 648 (Minn.1990). We reiterated the importance of compliance with CLE requirements in *In re Holmay,* stating that " '[i]t is of primary importance to the members of the Bar and to the public that attorneys continue their legal education throughout the period of their active practice of law.' " 464 N.W.2d 723, 724 (Minn.1991) (quoting Rule 1, R.Sup. Ct. C.L.E.).

In cases involving failure to comply with CLE requirements and/or failure to pay attorney registration fees, combined with the continued practice of law in state court, we have held that suspension is warranted. In *Beman,* the attorney continued to actively practice law while on restricted status and was suspended for three months.[7] 451 N.W.2d at 647. In *In re Neill,* practice while on restricted status for noncompliance with CLE and failing to pay attorney registration fees, combined with neglecting a client, warranted a three-year suspension. 486 N.W.2d 150, 151 (Minn.1992). Similarly, in *In re Jensen,* the court suspended an attorney indefinitely where, in addition to practicing law while suspended, failure to cooperate, and failure to pay attorney registration fees, the attorney had neglected two client matters. 418 N.W.2d 721, 723 (Minn.1988). In *In re Wertz,* we suspended an attorney for 90 days for practicing while automatically suspended

---

7. The *Beman* court stated that because it was the initial case where the failure to comply with CLE would factor most significantly in determining the discipline, reduction of the suspension from 6 months to 3 months was warranted. 451 N.W.2d at 648.

for failure to pay the attorney registration fee where there was no allegation of failure to cooperate with the Director's office. 442 N.W.2d 781, 782 (Minn.1989). While *Beman* resembles the instant case, in *Beman,* there was no allegation of noncooperation with the Director's office. Noncooperation with the disciplinary process is a serious offense itself and alone has warranted suspension. *Walker,* 461 N.W.2d at 223. *See also In re Cartwright,* 282 N.W.2d 548, 552 (Minn.1979) (finding that noncooperation alone justified 6–month suspension).

We conclude that the evidence is clear and convincing that in the Louisiana Capital Defense Program matter Lallier held himself out to practice law in state court when not authorized to do so. The evidence is also clear and convincing that Lallier practiced law in state court while on CLE restricted status by representing the American Bank of Mankato and also practiced law in state court while fee suspended by representing a Minneapolis bank. Additionally, Lallier's failure to cooperate with the Director's office is likewise clearly supported by the evidence.

Therefore, it is the judgment of this court, that:

(1) Respondent, Raymond C. Lallier, is indefinitely suspended from the practice of law in the State of Minnesota without right to petition for reinstatement prior to a date 180 days after the date of this opinion.

(2) Reinstatement shall be conditioned on compliance with the requirements of Rules 18 and 26, Rules on Lawyers Professional Responsibility.

(3) Respondent shall pay to the Director the sum of $750 in costs pursuant to Rule 24, Rules of Lawyers Professional Responsibility.

BLATZ, J., took no part in the consideration or decision of this case.