**In re Petition for DISCIPLINARY ACTION AGAINST John T. ANDERSON, a Minnesota Attorney, Registration No. 2549.**

No. A07–2126.

Supreme Court of Minnesota.

Jan. 29, 2009.

Martin A. Cole, Director, Cassie Hanson, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

John T. Anderson, Jr., Minneapolis, MN, respondent, pro se.

OPINION

PER CURIAM.

On November 9, 2007, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent John T. Anderson, Jr., committed professional misconduct warranting *public* discipline. Specifically, Anderson was charged with violation of the terms of an earlier probation, failure to cooperate with the Director, and neglect of a client matter in violation of Minn. R. Prof. Conduct 1.16(d), 8.1(b), and 8.4(d). A referee found that Anderson violated these Rules of Professional Conduct, along with the terms of his probation, and recommended that he be suspended indefinitely with no right to petition for reinstatement for a minimum of 9 months (270 days). We adopt the referee's findings and conclusions of law in part and suspend Anderson indefinitely with no right to petition for reinstatement for a minimum of 6 months.

In August 2005, Anderson was suspended from the practice of law for sixty days. *In re Anderson,* 702 N.W.2d 217, 217 (Minn.2005). In November 2005, Anderson was reinstated and placed on two years of supervised probation. *In re Anderson,* 706 N.W.2d 58, 58 (Minn.2005).

In April 2007, the Director sought to revoke Anderson's probation due to noncooperation. In May 2007, Anderson and the Director executed a stipulation for discipline, which extended Anderson's supervised probation for two additional years. The stipulation required, inter alia, that Anderson: (1) cooperate fully with the Director's Office; (2) abide by the Minnesota Rules of Professional Conduct; (3) be supervised by a licensed Minnesota attorney; (4) provide the Director with the names of four attorneys who would be willing to supervise him; (5) submit an inventory of all active client files to the Director until a

supervisor was appointed, then to the supervisor; and (6) maintain law office and trust account books in compliance with Minn. R. Prof. Conduct 1.15 and submit these books to the Director when the Director deemed necessary. We approved the stipulation. *In re Anderson*, 734 N.W.2d 238, 238–39 (Minn.2007).

Anderson never submitted to the Director the names of four attorneys willing to supervise him. Anderson testified that he found three attorneys willing to supervise him, but was not able to find a fourth and stopped looking after the petition to revoke his probation was filed in November 2007. Anderson also failed to submit his active case files or his trust account books to the Director.

Anderson was also the subject of a client complaint. The client, who claimed personal injuries as a result of an automobile accident, retained Anderson to represent him. But after becoming dissatisfied with the representation, the client fired Anderson.

Anderson moved offices and, apparently as a result, the client's file was lost. The client eventually retained another attorney to represent him in the auto accident claim. The new attorney also contacted Anderson, requesting the client's file. Anderson admitted receiving the request, but did not respond as he assumed the new attorney knew that Anderson had lost the file and thought any contact would be pointless.

On June 21, 2007, the Director sent a copy of the client's complaint to Anderson. Anderson denies receiving the complaint. Between July 17, 2007, and September 27, 2007, the Director sent Anderson 6 letters. These letters dealt either with Anderson's failure to comply with his probation terms or with his failure to respond to the Director's inquiry regarding the client's complaint. Anderson admitted to receiving all of these letters and responding to none of them.

On September 7, 2007, the Director sent two letters to Anderson. One letter set a meeting for September 26, 2007, between Anderson and an attorney in the Director's Office. The other letter, although dealing with a different subject matter, also referenced the proposed September 26 meeting. Anderson admits to having received both letters but stated that he did not read one because he believed that the two September 7 letters he received from the Director were identical. Anderson did not attend the September 26 meeting. He acknowledged that he missed the meeting, but could not tell "specifically why" he missed it. In testimony he said, "I didn't have any reason not to go."

On November 9, 2007, the Director filed a petition to revoke Anderson's probation. On November 29, 2007, Anderson filed an answer to the petition, and on December 12, 2007, sent the Director's Office a letter regarding the client's complaint. A referee was appointed and a hearing was held March 17, 2008.

## I.

Anderson disputes that the referee's factual findings were supported by clear and convincing evidence. At a disciplinary hearing, the Director bears the burden of proving by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *In re Westby*, 639 N.W.2d 358, 367 (Minn.2002). Because a transcript was ordered, the referee's findings of fact and conclusions of law are not binding on this court. *In re Peterson*, 718 N.W.2d 849, 853 (Minn. 2006). We give "great deference" to the referee's findings, however, *In re Wentzell*, 656 N.W.2d 402, 405 (Minn.2003), and will uphold a referee's findings and conclusions

"if they have evidentiary support in the record and are not clearly erroneous." *In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006), *amended by*, 733 N.W.2d 777 (Minn. 2007). The referee's findings that are based on a respondent's "demeanor, credibility, or sincerity" will be reversed only if "upon review of the entire evidence, [we are] left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation omitted).

■ Here there was sufficient evidence to support the referee's findings that Anderson had failed to comply with the terms of his probation and failed to cooperate with the Director in investigating the client complaint. Anderson did not submit four attorney names to the Director. Anderson never provided the Director with an inventory of active client files. Anderson never made his trust account books and records available to the Director. Because these findings are sufficient to support the sanction we believe to be appropriate, we decline to reach the issue of whether the referee's factual findings about Anderson's misconduct involving the client complaint are supported and whether the referee violated Anderson's due process rights by finding a violation of a rule with which the Director did not charge him. *See, e.g., Calm Waters, LLC v. Kanabec County Bd. of Com'rs*, 756 N.W.2d 716, 718 (Minn.2008) (declining to reach an issue where the resolution would be irrelevant).

## II.

We next turn to Anderson's contention that where there are no underlying ethical violations, an attorney should not be sanctioned for failing to cooperate with the Director. First, Anderson does not recognize that the circumstances here are not just a failure to cooperate with a minor request from the Director, or even an unreasonable or unfair request from the Director. Rather Anderson utterly failed to cooperate in the performance of stipulated terms of probation, terms that Anderson agreed to not once, but twice, in the original stipulation and in the stipulation extending probation.

■ Second, we have previously concluded that failure to cooperate with the Director in carrying out the terms of probation is subject to sanctions. *In re Rhodes*, 740 N.W.2d 574, 579 (Minn.2007). We have also revoked probation and imposed additional sanctions in cases where the central or sole violation was failure to comply with probation, holding that attorneys who are on probation "should be especially careful to assure compliance with obligations." *In re Munns*, 475 N.W.2d 82, 85 (Minn.1991). *See also In re De Rycke*, 644 N.W.2d 797, 800 (Minn.2002) ("When an attorney fails to comply with his court ordered probation, that attorney may be indefinitely suspended from the practice of law."). We conclude that Anderson's claim that an attorney should not be sanctioned for failing to cooperate with the Director when there are no underlying ethical violations lacks merit.

## III.

■ We next turn to Anderson's argument that he did not violate Minn. R. Prof. Conduct 8.1(b)[1] because he did not know that the Director had requested information in response to a complaint filed by the client. Anderson argues that the required

---

1. Rule 8.1(b) states that an attorney shall not "fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

mens rea for failing to cooperate is "willfulness." Rule 8.1(b) makes it a violation of the Rules to "knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority." Anderson argues that because he did not receive one letter and did not read others, he did not know about the client's complaint and therefore his failure to respond was not "willful."

The plain language of Rule 8.1(b) bars an attorney from "knowingly" failing to respond to a disciplinary authority. There is no authority that the failure must also be "willful."[2] Under the Rules of Professional Conduct, "knowingly" "denotes actual knowledge of the fact in question," which may "be inferred from circumstances." Minn. R. Prof. Conduct 1.0(g). Direct evidence of an attorney's "uncooperative state of mind" is not necessary to meet the clear and convincing evidence standard. *In re Erickson*, 653 N.W.2d 184, 190 (Minn.2002).

The referee examined the circumstances and concluded that Anderson violated Rule 8.1(b). The evidence supports the referee's findings. Even if Anderson did not receive the first letter regarding the client's complaint, he admitted to receipt of all of the other letters, many of which reference the complaint. It is difficult to identify exactly which letters he did and did not read, but he admitted to having read some of the letters and that he responded to none. Even if Anderson did not know the precise details of the complaint against him, the fact that he received multiple letters from the Director, referring to many different professional responsibility issues surrounding Anderson and his law practice, leads inescapably to the conclusion that he had notice of continuing problems with probation compliance and other professional responsibility concerns.[3] Anderson's failure to read the letters from the Director does not allow him to escape responsibility for failing to respond to requests made in those letters.[4] *See Erickson*, 653 N.W.2d at 190–91 (attorney intentionally failed to cooperate with Director where attorney received multiple letters to multiple addresses and failed to respond to many of the letters); *In re Anderson*[5], 569 N.W.2d 923 (Minn.1997) (attorney failed to cooperate where attorney did not initially receive letters from the Director because he failed to regularly check his mail, eventually received the letters, but failed to respond until compelled to do so); *In re Lallier*, 555 N.W.2d 903 (Minn.1996) (admission of receipt of letters from Director was sufficient to find noncooperation in failing to respond to the letters). *See also Van Christo Adver., Inc. v. M/A–COM/LCS*, 426 Mass. 410, 688 N.E.2d 985, 990 (1998) (holding that an attorney's "willful ignorance" of facts and law that would have been known if the

---

2. Anderson cites to *In re Ek*, 643 N.W.2d 611, 614 (Minn.2002), as support for his claim that it must be "willful." But *Ek* does not state that the failure to respond must be willful; instead it notes that Ek's conduct was "knowing *and* willful." *Id.* (emphasis added).

3. Anderson also had actual knowledge of the terms of his probation, which required him to affirmatively contact the Director and provide the names of four attorneys willing to act as his supervisor, his active case files, and his trust account books. He provided none of the required information.

4. The allegation of failure to cooperate with the Director regarding the client's complaint was further supported by the fact that Anderson waited about six weeks after he claimed to have learned about the complaint (when he received the petition to revoke his probation) to respond.

5. This is not the Anderson discussed in this opinion.

attorney had not chosen to consciously disregard them did not excuse a Rule 11 violation). We conclude that Anderson's claim that he lacked knowledge of the client's complaint against him lacks merit.

## IV.

Finally, we turn to the sanction to be imposed. The referee recommended that Anderson be indefinitely suspended from the practice of law with eligibility to apply for reinstatement after nine months (270 days). Anderson seeks either a lesser sanction or no sanction at all.

▮▮▮ Although we place great weight on the recommendation of the referee, we retain the final responsibility for determining the appropriate sanction. *In re Wood,* 716 N.W.2d 341, 347 (Minn.2006). "The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." [6] *In re De Rycke,* 707 N.W.2d 370, 373 (Minn.2006) (internal quotation omitted). In imposing discipline, we look to the nature of the misconduct, the cumulative weight of the violations, the potential harm to the public, and the harm caused to the legal profession. *Westby,* 639 N.W.2d at 370. In that evaluation, three specific considerations come into play: 1) the conduct at issue; 2) the presence of any aggravating factors; and 3) the presence of any mitigating factors. *Wentzell,* 656 N.W.2d at 408. Although discipline is imposed on a case-by-case basis, prior analogous cases may also indicate the proper sanction. *Id.*

Our order extending Anderson's existing probation required him to submit documents (e.g., active client files, accounting and trust books) to the Director (at least until a supervising attorney was appointed).[7] Anderson was also required to cooperate with the Director in all matters regarding Anderson's compliance with his probation. Over several months, Anderson received seven letters from the Director requesting his cooperation in complying with his probation and also with an investigation into a complaint filed by a former client. Although admitting to receiving all but one of the letters, Anderson responded to none. He also did not attend a meeting requested by the Director. While on probation, Anderson also lost a client's file, failed to contact the client's new attorney, and did not respond to a request for information.

▮▮▮ We expect a previously disciplined attorney to demonstrate "a renewed commitment to comprehensive ethical and professional behavior." *In re Simonson,* 420 N.W.2d 903, 906 (Minn.1988). We have held that "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn. 2004) (internal citation omitted). When a lawyer is before this court after previously receiving discipline, "it is the general rule that the discipline to be imposed must be reviewed in light of the earlier miscon-

---

**6.** Anderson claims that the only purpose the Director could possibly have in seeking sanctions is "punishment." He claims that he committed no ethical violation and that therefore "the aim of the Director cannot be anything other than punishment." Anderson did not present any evidence that this was the Director's motivation.

**7.** Anderson claims he was not on probation, as his "new" probation had not started yet. But our order simply extended Anderson's previous probation (which was still in effect when extended). Therefore, Anderson's claim is without merit.

duct." *In re Getty,* 452 N.W.2d 694, 698 (Minn.1990).

Between 1992 and 1996, Anderson was admonished three times for client-related misconduct.[8] In October 1996, we publicly reprimanded him and placed him on two years' supervised probation for neglect and non-communication. *In re Anderson,* 554 N.W.2d 616 (Minn.1996). Anderson was admonished again in 1997 for further neglect and non-communication. In 2000, Anderson was admonished for losing client property. On August 11, 2005, this court suspended Anderson from the practice of law for sixty days, to be followed by two years' supervised probation upon reinstatement, for neglect and non-communication in a client matter, making misrepresentations to the client in order to conceal the neglect, and non-cooperation in the disciplinary investigation. *See In re Anderson,* 702 N.W.2d 217 (Minn.2005). Anderson failed to comply with the terms of his probation, and this court extended his probation for another two years. *See In re Anderson,* 734 N.W.2d 238 (Minn. 2007). It is this extended probation that the Director seeks to revoke. While individual private admonitions might be "non serious," the large number of disciplinary actions taken against Anderson in the last 16 years supports the referee's finding that Anderson's disciplinary history was an aggravating factor.

We conclude that an indefinite suspension for a minimum of six months is appropriate. We have imposed both lengthier and shorter suspensions in cases where attorneys commit new violations of the Rules of Professional Conduct and fail to cooperate with the Director. The lengthier suspensions have generally involved more serious underlying behavior. *See,*

e.g., *In re Franklin,* 726 N.W.2d 95 (Minn. 2007) (attorney neglected several clients). The shorter suspensions generally involved more cooperation, less disciplinary history, or both. *See, e.g., In re Jennings,* 748 N.W.2d 291 (Minn.2008) (attorney was on unsupervised probation and admitted to his misconduct); *In re Danielson,* 620 N.W.2d 718 (Minn.2001) (attorney met with the Director at least once). We conclude that the appropriate sanction for Anderson's misconduct is indefinite suspension, with eligibility to apply for reinstatement after six months.

Accordingly, we order that:

1. John T. Anderson be indefinitely suspended from the practice of law, effective ten days from the date of filing of this opinion, and be ineligible to petition for reinstatement for a minimum of six months from the filing of this opinion.

2. If Anderson seeks reinstatement, he must comply with the requirements of Rule 18(a)-(e) of the Minnesota Rules on Lawyers Professional Responsibility.

3. Anderson shall comply with the requirements of Rule 26 of the Minnesota Rules of Lawyers Professional Responsibility.

So ordered.

---

**8.** Anderson claims to have filed a petition challenging these, and other, admonitions. No evidence of this petition is in the record

and the petition, if it exists, is irrelevant to the matters before us.