In re Petition for DISCIPLINARY AC-
TION AGAINST Chad Michael ROG-
GEMAN, a Minnesota Attorney, Reg-
istration No. 28788X.

No. A09–100.

Supreme Court of Minnesota.

March 11, 2010.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, Minneapolis, MN, for respondent attorney.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition seeking disciplinary action against attorney Chad Michael Roggeman, alleging that Roggeman lacked thoroughness and preparation in a client matter, neglected the client matter, failed to keep the client informed about the matter, made misrepresentations to the client, and failed to comply with court rules. The court-appointed referee found that Roggeman's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 3.2, 3.4(c), 4.1, and 8.4(c) and (d). The referee recommended that Roggeman be publicly reprimanded and placed on supervised probation for two years.

Roggeman contests three of the referee's findings of fact and one conclusion, but agrees with the referee's recommendation for discipline. The Director agrees with the referee's factual findings and conclusions, but requests that Roggeman be suspended from the practice of law for at least 60 days and placed on supervised probation for two years upon reinstatement. After a thorough review of the record, we conclude that the referee's findings are not clearly erroneous, and we publicly reprimand Roggeman and place him on supervised probation for two years.

Roggeman was admitted to practice law in Minnesota in 1998. He worked as an attorney at a small law firm for several years, primarily on probate and estate planning matters. He left that firm and was a solo practitioner for a short time before joining the St. Cloud branch of a large Minneapolis law firm, where he was hired to develop a St. Cloud-based estate planning and probate practice and was a shareholder of the firm.

In July 2006 M.V. retained Roggeman to challenge the will of her deceased aunt, and paid Roggeman a $2,500 retainer. Roggeman began working on the matter, and on July 18, 2006, filed a petition to set aside an informal probate proceeding in favor of a formal probate proceeding, to remove M.V.'s father as personal representative of the aunt's estate, and to appoint an independent personal representative. On August 10, 2006, Roggeman filed a notice of lis pendens against real property owned by the aunt's estate. M.V.'s father later resigned as personal representative of the estate and was replaced by M.V.'s mother.

The district court held a scheduling hearing on September 15, 2006, establishing deadlines for serving interrogatories, depositions, and filing motions; the first scheduled deadline was May 16, 2007. Roggeman did not put any of the dates on his calendar and set aside the scheduling order because the deadlines were over six months away. He testified that he was relieved that the deadlines were in the spring of 2007 because he hoped that the case might resolve itself prior to the deadlines and that he would not have to do any more work on the matter.

William Hedeen, counsel for the estate's personal representative, sent a letter to Roggeman on September 28, 2006, requesting removal of the notice of lis pendens so that the estate could receive payments from the Federal Conservation Reserve Program. Roggeman set the letter aside, along with Hedeen's subsequent motion to remove the notice of lis pendens and did not open the envelopes after their arrival. Roggeman testified that at some point he did review the letter and motion prior to the December 5, 2006, court hearing to discharge the notice of lis pendens. Without discussing the matter with his client, Roggeman decided that no response was necessary; he did not attend the hearing, and the court dis-

charged the notice of lis pendens.[1] Roggeman did not inform M.V. that the notice of lis pendens had been discharged.

In March 2007, M.V. called Roggeman several times and left messages, but Roggeman did not respond. Hedeen mailed interrogatories to Roggeman on April 23, 2007, but Roggeman did not respond and did not forward the interrogatories to M.V. Hedeen sent a follow-up letter on June 7; approximately one week later, he filed a motion to compel discovery based on the lack of response to the interrogatories, and he also sent a witness list to Roggeman. Roggeman again did not respond or contact his client. Roggeman had been setting aside unopened mail at the office, and he testified that he did not recall receiving communications about the M.V. matter. The district court conducted a hearing on July 3, 2007, concerning the motion to compel discovery; Roggeman did not attend. On July 18, 2007, the court dismissed M.V.'s claim with prejudice because of Roggeman's failure to respond to the interrogatories and overall inaction on the case.

Unaware of the district court's order dismissing the case, M.V. sent an e-mail to Roggeman on July 24, 2007, informing him that her father had died, but that she still wanted to pursue her claim. Roggeman later acknowledged receiving the court's order, but testified that he only read the last page of the order and saw that the action had been dismissed with prejudice. He testified that he was embarrassed and upset, but did not inform anyone about the situation, including his client.

In mid-September 2007 M.V. mailed documents to Roggeman, along with another check for $2,500 for attorney fees. Her husband sent an e-mail to Roggeman's office to confirm that the office had received the package, and Roggeman's assistant sent an e-mail response indicating that the office had received the package. Roggeman testified, however, that he shredded the check because he had caused M.V.'s claim contesting her aunt's will to be dismissed.

In October 2007 Roggeman told M.V. during a phone conversation that her claim contesting her aunt's will had been dismissed on a technicality. He told her that the prior will (naming M.V. as a beneficiary) was not valid because it had never been filed, and the will that had been made shortly before her aunt's death had been filed. Roggeman misrepresented the situation to M.V. and did not disclose that the case had been dismissed due to his neglect because he hoped the matter would resolve itself. He made another misrepresentation by telling M.V. that he had misplaced the $2,500 check when in fact he had shredded it.

On January 5, 2008, M.V.'s husband sent Roggeman an e-mail asking specific questions about the dismissal of the case. Roggeman later called M.V. and told her that the case had been dismissed because he had missed the trial date, and that he had been making misrepresentations to her since that time. M.V. indicated that she wanted to pursue a malpractice action. Roggeman then disclosed the situation to his firm.

The firm obtained a copy of the court file and found that the case had been dismissed due to Roggeman's failure to respond to the interrogatories, not because of his failure to appear at a hearing. The

1. Roggeman testified that he did not believe a response was necessary and that removal of the notice of lis pendens was acceptable because the estate was subject to supervised administration at that time, making the notice of lis pendens unnecessary, and there was no reason to prevent the estate from receiving income.

firm conducted an audit of all of Rogge-man's other files; he was told that there were no problems with any other case. The firm removed Roggeman from share-holder status, but allowed him to continue to work at the firm for another 11 months. He then resumed solo practice.

Three medical professionals testified on Roggeman's behalf. They testified that Roggeman suffers from depression and an anxiety disorder. He had been taking an-tidepressants. None of the medical pro-fessionals, however, testified that Rogge-man's mental health issues caused him to neglect M.V.'s matter or to fail to ade-quately communicate with her.

The referee concluded that Roggeman's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 3.2, 3.4(c), 4.1, and 8.4(c) and (d).[2] The referee found that during the time of the M.V. matter, Roggeman had conducted all of his other professional mat-ters appropriately, but that he was indif-ferent to making restitution to M.V. for fees paid, and this indifference aggravated his misconduct. But the referee concluded

that Roggeman acknowledges the wrongful nature of his actions and exhibits remorse, and that Roggeman's character witnesses and pro bono work indicate he is an attor-ney who seeks to be competent, honest, and ethical. The referee did not find miti-gation in Roggeman's claim that he self-reported his misconduct. According to the referee, Roggeman's lack of prior miscon-duct and mishandling of only one client matter do not mitigate his actions because the misconduct involved multiple acts and occurred over several months. Lastly, the referee concluded that there was no clear and convincing evidence that Roggeman's misconduct is not apt to recur under the same or similar circumstances. Based on these findings, the referee recommended that Roggeman be publicly reprimanded and put on supervised probation for two years.

Most of the referee's findings and con-clusions are based on Roggeman's admis-sions or on documentary evidence that Roggeman does not contest. Neverthe-less, Roggeman contends that the referee

**2.** Rule 1.1 states: "A lawyer shall provide competent representation to a client. Compe-tent representation requires the legal knowl-edge, skill, thoroughness, and preparation reasonably necessary for the representation."

Rule 1.3 states: "A lawyer shall act with reasonable diligence and promptness in rep-resenting a client."

Rule 1.4 states:
(a) A lawyer shall
(1) promptly inform the client of any de-cision or circumstance with
respect to which the client's informed consent, as defined in Rule 1.0(f), is re-quired by these rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable re-quests for information; and
(5) consult with the client about any rele-vant limitation on the lawyer's conduct

when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regard-ing the representation.

Rule 3.2 states: "A lawyer shall make rea-sonable efforts to expedite litigation consis-tent with the interests of the client."

Rule 3.4(c) states: "A lawyer shall not . . . (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

Rule 4.1 states: "In the course of represent-ing a client, a lawyer shall not knowingly make a false statement of fact or law."

Rule 8.4(c)-(d) states: "It is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice."

erred concerning three findings: (1) that Roggeman made a false statement through his assistant in September 2007; (2) that Roggeman lied about the reasons for dismissal when he spoke with M.V. and her husband in January 2008; and (3) that Roggeman was indifferent to making restitution to his client.[3] But Roggeman agrees with the referee's recommended discipline. In contrast, the Director requests that this court suspend Roggeman for at least 60 days from the practice of law and place him on two years of supervised probation instead of adopting the referee's recommendation.

## I.

■■■ We first address Roggeman's contention that the referee erred regarding three findings of fact and one conclusion. Because Roggeman ordered a transcript of the disciplinary hearing, this court is not bound by the referee's findings of fact and conclusions. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *In re Peterson,* 718 N.W.2d 849, 853 (Minn.2006). The Director bears the burden of proving misconduct by clear and convincing evidence at a disciplinary hearing. *In re Houge,* 764 N.W.2d 328, 334 (Minn.2009). Even though the referee's findings and conclusions are not binding when a transcript is ordered, we give great deference to the findings and conclusions and will uphold those that are supported by the record and not clearly erroneous. *Id.*

## A.

■■■ Roggeman contends that the referee erred in finding that Roggeman made a false statement through his assistant in September 2007. M.V.'s husband sent an e-mail to Roggeman's assistant on September 27, 2007, to confirm that Roggeman's office had received a "package" on September 18. Roggeman's assistant replied to the e-mail and said:

> We do have the package here. [Roggeman] indicated there is no "real deadline" imposed by the otherside [sic], but he does have a letter drafted that he will be sending in the next few days, which includes another demand for the accounting. [M.V.] will be receiving a copy of that letter. If you have any further concerns or questions, please do not hesitate to contact me. Thank you!

The referee found that Roggeman's statement, through his assistant's e-mail, was false and misleading, because it implied that M.V.'s claim contesting her aunt's will was still pending when it had been dismissed two months previously. Roggeman argues that the e-mail was not false or misleading because he had previously spoken to M.V. about a September 7 letter from Hedeen concerning the will and trust of M.V.'s father, which was a matter separate from the aunt's will, and that Roggeman had agreed to write to Hedeen concerning the father's will and trust. Roggeman contends that his assistant's e-mail reference of "a letter drafted that [Roggeman] will be sending in the next few days" is consistent only with an October 16, 2007, letter that Roggeman sent to Hedeen regarding M.V.'s father's will and trust.

While Roggeman's version of these events is not implausible, we conclude that the referee's finding that the e-mail was false and misleading is not clearly erroneous based on M.V.'s testimony that the package contained a retainer check and an e-mail setting forth what she wanted done

---

**3.** Because Roggeman contends that he was not indifferent to making restitution, he argues that the referee also erred in concluding that such indifference aggravated his conduct.

with regard to her claim contesting her aunt's will.

## B.

■ Roggeman also argues that the referee clearly erred in finding that Roggeman made a false statement about the reasons that M.V.'s claim contesting her aunt's will had been dismissed when Roggeman spoke with M.V. in January 2008.

During a phone conversation with M.V. on January 14, 2008, Roggeman told her that the claim had been dismissed because Roggeman had not appeared at a hearing due to an incorrect entry of the hearing date on his calendar. But the court had dismissed the case because Roggeman never responded to the interrogatories, not because of Roggeman's failure to appear at a hearing. Roggeman claims that the statement he made to M.V. during that conversation about the reason for dismissal was not false because at that time, he had not yet read the entire court order and was not aware of the precise grounds for dismissal. He testified that he had only read the last page of the order, which did not make reference to his failure to respond to the interrogatories, and because the court dismissed the case, he assumed that it was because he had missed the trial date.

We conclude that the referee did not clearly err. The court order dismissing the case was only four pages long. The bottom of page three, which Roggeman claims he had not read prior to the January 14 conversation, states that "[M.V.] has failed to comply with the Minnesota Rules of Civil Procedure by failing to answer interrogatories in a timely fashion and has provided no good reason for failing to provide said answers." The fourth

and last page, which Roggeman did read, states that "[M.V.'s] lack of action and appearance before the Court in this file rises to a level of failure to prosecute the case," and the matter was dismissed with prejudice. Assuming for the sake of argument that Roggeman had only read the last page of the court's short order, the words "*lack of action and* appearance . . . rises to a level of failure to prosecute the case" provide legitimate grounds for the referee to have found that Roggeman was aware that it was not simply his non-appearance before the court that caused the dismissal.[4]

■ Further, findings that are based on the "demeanor, credibility, or sincerity" of a respondent will be reversed if "upon review of the entire evidence, [we are] left with the definite and firm conviction that a mistake has been made." *In re Anderson,* 759 N.W.2d 892, 896 (Minn.2009) (citation omitted) (internal quotation marks omitted). In reviewing the entire evidence, we are not left with a definite and firm conviction that a mistake was made by the referee.

## C.

■ Next, Roggeman contends that the referee erred in finding that Roggeman was indifferent to making restitution to M.V. and concluding that such indifference aggravated his misconduct. M.V. testified that during Roggeman's phone conversation with her on January 14, 2008, M.V. asked for the return of fees she had paid. M.V. further testified that Roggeman said that he would send the fees to her, but she did not receive a refund at that time. Instead, M.V. received a refund from the law

---

**4.** Roggeman's failure to read the entirety of the four-page court order also supports our conclusion that Roggeman violated the dili- gence requirement in Minn. R. Prof. Conduct 1.3.

firm nearly 6 months later, in June or July 2008.

Roggeman testified that he did not personally make restitution to M.V.; the firm did. He testified that he had volunteered to pay M.V. "out of [his] own pocket," but the firm said it would send a check. He stated that the firm discouraged him from reimbursing M.V. with his own funds.

We agree with the referee's finding that Roggeman was indifferent to making restitution, though it may be more accurate to describe Roggeman as not diligent with regard to restitution. Roggeman told M.V. that he would send her the fees, yet he relied entirely on the firm to make restitution. Although Roggeman testified that the firm instructed him that it would handle restitution, other than relating to the firm that he had told M.V. that he would reimburse her, it does not appear that he sought to be involved with the restitution process in some way, nor does it appear that he took any follow-up measures with the firm to ensure that restitution was made to M.V. in a timely fashion.[5] Additionally, there is no supporting evidence from the firm corroborating Roggeman's account. On this record, we cannot say that we find any error with regard to the referee's findings and conclusions.

## II.

■ Lastly, we must determine the proper discipline for Roggeman. The referee recommended that Roggeman be publicly reprimanded and placed on supervised probation for a period of two years, subject to certain conditions. Roggeman agrees with the referee's recommendation, but the Director requests that we suspend Roggeman for at least 60 days and place him on supervised probation for two years upon reinstatement.

■ We place great weight on the referee's recommendation, but retain ultimate responsibility for selecting the proper sanction. *Anderson,* 759 N.W.2d at 898. We do not take disciplinary action to punish. *Houge,* 764 N.W.2d at 337. Rather, the purpose of disciplinary sanction for professional misconduct is "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Anderson,* 759 N.W.2d at 898 (citation omitted) (internal quotation marks omitted). When we impose discipline, we look at the nature of the misconduct, the cumulative weight of the violations, potential harm to the public, and the harm caused to the legal profession. *Id.* When looking at these general factors, we make three specific considerations: (1) the conduct at issue, (2) the presence of any aggravating factors, and (3) the presence of any mitigating factors. *Id.* Each attorney discipline case is evaluated on an individual basis. *Houge,* 764 N.W.2d at 337. Nevertheless, prior analogous disciplinary cases can be helpful when determining an appropriate sanction. *Anderson,* 759 N.W.2d at 898.

The Director argues that we should suspend Roggeman for at least 60 days because Roggeman's misconduct involves dishonesty and efforts to hide misconduct by different misrepresentations over an extended period of time, and because he only exhibited candor when compelled to do so.

---

5. Roggeman also claims that the referee's conclusion that Roggeman exhibited indifference to making restitution contradicts the referee's conclusion that Roggeman was remorseful. Roggeman's assertion, however, is based on the erroneous assumption that a remorseful person will necessarily take active steps to remedy his errors. It is possible to be remorseful or contrite about performing (or not performing) a task, and yet not take affirmative actions to fully rectify the consequences or failure.

Further, the Director contends that Roggeman consistently neglected M.V.'s claim and failed to keep her informed. In support of his argument, the Director cites *In re Danna*, 403 N.W.2d 239, 240–41 (Minn. 1987), where an attorney was suspended for 90 days for forging a client's name to affidavits, notarizing false signatures, submitting the affidavits and making misrepresentations during the disciplinary investigation. In *Danna*, we stated that if the sanction did "not serve to deter such misconduct, we will impose more serious sanctions in the future." *Id.* at 241. The Director also notes that ten years later, in *In re Ward*, 563 N.W.2d 70, 72 (Minn. 1997), we cited the warning in *Danna* that we would impose stronger sanctions in the future if 90–day suspensions did not succeed in deterring attorneys from engaging in misrepresentations. In *Ward*, we imposed a six-month suspension on an attorney for giving false testimony under oath, presenting false testimony of a client, and representing a client despite an impermissible conflict of interest. *Id.* at 70.

Although in *Danna* and *Ward* we voiced our concern about misrepresentations and dishonesty and warned that we would not treat such actions lightly, the nature of the attorneys' actions in those cases was far more serious than here.[6] Although we do not condone Roggeman's actions, we see no reason to depart from the referee's recommended discipline simply because of general warnings against misrepresentations stated in prior inapposite disciplinary actions.

Here, the misconduct essentially has three parts: neglect of one client's case, misrepresentations to cover the errors in that one case, and failure to communicate. The discipline that the referee recommends is consistent with discipline we have imposed in comparable matters. In a case that did not involve misrepresentations, but where an attorney failed to commence an action before the running of a statute of limitations and failed to disclose this to the client, we publicly reprimanded the attorney and imposed one year supervised probation. *In re Letourneau*, 712 N.W.2d 183, 185–86, 189 (Minn.2006). Where an attorney failed to adequately communicate with three clients and misrepresented the status of their cases, we publicly reprimanded the attorney and suspended him for 30 days. *In re Shaughnessy*, 467 N.W.2d 620, 621–22 (Minn.1991). But we had taken into consideration that the attorney had two prior warnings and a private admonition, and we stated that the conduct revealed a pattern of unprofessional conduct. *Id.* at 622.

Besides Roggeman's conduct, we consider aggravating and mitigating factors. Roggeman was not diligent with respect to restitution, but Roggeman acknowledges the wrongful nature of his actions and exhibits remorse. Although the misconduct occurred over several months, the Director does not claim that Roggeman has committed acts of misconduct in other cases, there is nothing in the record to indicate that the firm audit uncovered any other reportable events, and Roggeman has no history of prior discipline. Lastly, Roggeman's character witnesses and his pro bono work indicate that he is an attorney that strives to be competent, honest, and ethical, notwithstanding his failures here.

Based on the record before us, we agree with the referee that the appropriate discipline is to publicly reprimand Roggeman and place him on two years of supervised

---

6. In fact, we have described the attorney's conduct in *Danna* as "[t]he most extreme forgery case in Minnesota thus far." *In re Boyd*, 430 N.W.2d 663, 666 (Minn.1988).

probation, subject to the following terms and conditions:

1. Attorney Chad Michael Roggeman shall cooperate fully with the Director's office in its efforts to monitor compliance with this probation and promptly respond to the Director's correspondence by the due date. Roggeman shall provide to the Director a current mailing address and shall immediately notify the Director of any change of address. Roggeman shall cooperate with the Director's investigation of any allegations of unprofessional conduct which may come to the Director's attention. Upon the Director's request, Roggeman shall provide authorization for release of information and documentation to verify compliance with the terms of this probation.

2. Roggeman shall abide by the Minnesota Rules of Professional Conduct.

3. Roggeman shall be supervised by a licensed Minnesota attorney, appointed by the Director to monitor compliance with the terms of this probation. Roggeman shall provide to the Director the names of four attorneys who have agreed to be nominated as Roggeman's supervisor within two weeks from the date of this order. If, after diligent effort, Roggeman is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor. Until a supervisor has signed a consent to supervise, Roggeman shall on the first day of each month provide the Director with an inventory of active client files described in paragraph four below. Roggeman shall make active client files available to the Director upon request.

4. Roggeman shall cooperate fully with the supervisor in the supervisor's efforts to monitor compliance with this probation. Roggeman shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter. Roggeman shall submit to the supervisor an inventory of all active client files by the first day of each month during the probation. With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date. Roggeman's supervisor shall file written reports with the Director at least quarterly, or at such more frequent intervals as may reasonably be requested by the Director.

5. Roggeman shall initiate and maintain office procedures which ensure that there are prompt responses to correspondence, telephone calls, and other important communications from clients, courts, and other persons interested in matters which Roggeman is handling, and which will ensure that Roggeman regularly reviews each and every file and completes legal matters on a timely basis.

6. Within 30 days from the filing of this order, Roggeman shall provide to the Director and to the probation supervisor, if any, a written plan outlining office procedures designed to ensure that Roggeman is in compliance with probation requirements. Roggeman shall provide progress reports as requested.

7. Roggeman shall continue current treatment by a licensed consulting psychologist or other mental health professional acceptable to the Director, and shall complete all therapy programs recommended by the therapist.

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that attorney Chad Michael Roggeman is publicly reprimanded and placed on supervised probation for a period of two years, subject to the conditions set forth above. Roggeman shall pay the sum of $900 in costs pursuant to Rule 24(a), RLPR, and

disbursements pursuant to Rule 24(b), RLPR.