In re Petition for DISCIPLINARY AC-
TION AGAINST Benjamin S.
HOUGE, a Minnesota Attorney Regis-
tration No. 47387.

No. A07–2332.

Supreme Court of Minnesota.

April 23, 2009.

Martin A. Cole, Director, Timothy R. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Benjamin S. Houge, Stillwater, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) petitions this court to take disciplinary action against Minnesota attorney Benjamin S. Houge for several acts of misconduct arising from Houge's representation and employment of a client, X. The court-appointed referee found that Houge violated eight Rules of Professional Conduct by testifying falsely, submitting false evidence, failing to correct false testimony, making other false statements, assisting in violation of court orders, and failing to supervise a non-lawyer assistant. Houge denies misconduct and argues that he is entitled to a new hearing because the Director had a conflict of interest and because Houge was forced to disclose privileged information in violation of due process. We conclude that the referee did not err in finding that Houge committed professional misconduct. We also adopt the referee's recommended discipline and suspend Houge's license indefinitely with no right to petition for reinstatement for a minimum of two years.

Houge was admitted to practice law in Minnesota in 1974. He has represented numerous clients in attorney malpractice matters as well as a variety of other matters. In November of 2000, Houge began representing X, a client who became a friend. X was in the business of purchasing and refinancing foreclosed real estate properties. X had previously been convicted of bank fraud and theft by swindle. On June 6, 2002, Houge and X executed an "independent contractor agreement." The agreement provided that X would research foreclosed properties and perform negotiation, analysis, and other necessary services for Houge's law practice. The agreement set compensation on a barter basis of $2,000 per month as credit against X's outstanding legal fees.

That summer X received his third felony conviction after he pleaded guilty to one count of theft by swindle. (Houge did not represent X in this criminal matter.) In the sentencing hearing, the Hennepin County District Court sentenced X to 17 months commitment to the Commissioner of Corrections, but stayed execution of the sentence for 10 years. The court's probation order required X, among other things, to spend 365 days in the Hennepin County Adult Corrections Facility, or "workhouse," refrain from "self-employment in the real estate and mortgage or finances field[s]," and pay restitution. The amount of restitution was to be determined in a later proceeding.

Four days after sentencing, on November 5, 2002, Houge and X executed a new "employment agreement." The new terms assigned all commissions from transactions that X worked on to X's ex-wife; compensated X with a barter arrangement at $750 per week as a credit against X's outstanding legal fees; provided that Houge would supervise X's transactions; and assigned a percentage of the commissions collected by X's ex-wife to Houge for supervising X's transactions. X pursued at least three transactions under this agreement.

On February 18, 2003, Houge represented X in a pending civil matter brought by the victim of the 2002 theft-by-swindle conviction in Ramsey County District Court. On February 24, 2003, Houge represented X in the restitution hearing in the related Hennepin County criminal matter, where X was ordered to pay $51,620 in restitution. The terms of X's work for Houge were discussed before the court at both hearings.

On March 28, 2003, the Hennepin County District Court received a letter from an adversary of X's ex-wife in a civil dispute claiming that X had been violating the

terms of his probation and work release by engaging in self-employed real estate activities. The letter further alleged that X effected this deception through a sham employment arrangement with Houge's law practice. On April 17, 2003, Houge responded with an affidavit to the Hennepin County District Court describing X's work for Houge. That same day, Houge represented X in a hearing to determine whether X should be released from the workhouse and put on electronic home monitoring to accommodate health concerns. The district court denied home monitoring, but indicated that the court would order further investigation of X's arrangements with Houge.

Within a week of this hearing, X shifted employers from Houge to Fiteck, L.L.C. Houge helped to form Fiteck, which was established in Minnesota on April 23, 2003. Houge testified that he spoke with a probation officer at the workhouse about the new terms of X's employment. Houge remained involved with Fiteck to provide legal services, for which he was compensated.

On September 16, 2004, the investigating probation officer requested that X's probation be revoked.[1] The officer provided three grounds for probation revocation: (1) that X "pursued self-employment in the real estate field" without approval, (2) that the Attorney General had filed a civil suit against X alleging that he committed fraud and violated consumer protection laws, and (3) that X had been receiving commissions for negotiating real estate deals and financial transactions. In the revocation proceeding, Houge was subpoenaed to produce documents relating to the terms of X's employment. At the conclusion of the revocation proceeding, the district court found that X violated his probation. The probation violation finding was based on the employment arrangement between X and Houge, which the district court found had caused harm to several members of the public that X solicited for refinancing. The court revoked X's probation and executed the sentence on the 2002 theft-by-swindle conviction.

Thereafter, the Lawyers Professional Responsibility Board (Board) received complaints alleging professional misconduct by Houge from the Attorney General's office, the Hennepin County Attorney's office and the Hennepin County District Court judge who presided over X's criminal matter. On March 16, 2005, the Director's office wrote a letter to Houge detailing these complaints and requesting information. In response, Houge commenced a declaratory judgment action in Ramsey County District Court alleging that the information that the Director requested for the disciplinary proceeding was protected by the attorney-client privilege, and that the privilege applied because Houge represented X for matters in which the Attorney General and Hennepin County Attorney were X's adversaries.

In response to Houge's lawsuit, the Director withdrew the requests for documents and offered to stipulate to a protective order for any confidential or otherwise privileged information. Under the proposed order, the Attorney General would not have had access to privileged documents. Houge did not agree to the Director's proposal and responded with a proposed order of his own that would have required the Director's office to refer his disciplinary proceeding to special counsel based on conflict-of-interest issues. The

---

1. The probation officer originally determined that the "sham employment" allegation lacked merit. But upon further investigation, the officer found facts that warranted the revocation of probation.

district court dismissed Houge's complaint for lack of jurisdiction.

Houge subsequently stipulated to a hearing before a panel of the Lawyers Professional Responsibility Board. The stipulation signed by Houge set the panel hearing for November 19, 2007, and specifically stated that Houge "agrees not to seek any, and that there shall be no, continuance, postponement, rescheduling, extension or the like of the hearing date." Five days before the panel proceeding, on November 14, 2007, Houge filed a Petition for Declaratory Judgment and/or Writ of Mandamus in this court alleging, inter alia, a violation of procedural due process if the Director's disciplinary action was not referred to special counsel, or, alternatively, necessary modification to the rules of procedure for ethics complaints to protect privileged and confidential information. In an order filed November 19, 2007, we declined to stay the panel proceeding, but specifically reserved the merits of the claim for later briefing. After briefing, we issued an order denying Houge's petition. On November 29, 2007, the panel authorized the Director to file a petition in this court for Houge's discipline. The Director filed the petition on December 12, 2007, and we appointed a referee on January 10, 2008.

The referee notified both parties of a telephone scheduling conference set for February 6, 2008. Houge could not be reached for this meeting at the telephone numbers he provided, and the referee set the hearing date for April 11, 2008. The referee's findings further state that, on March 21, 2008, Houge filed a motion to delay the hearing, and that Houge did not timely provide an exhibit list or a witness list.

The disciplinary hearing began on April 11, 2008. On that date, X appeared and asserted his Fifth Amendment right not to testify in Houge's disciplinary matter because X was awaiting sentencing in a separate criminal matter. X also asserted attorney-client privilege for all communications to which the privilege would attach. But X stated under oath that he would waive the attorney-client privilege and his Fifth Amendment rights for this disciplinary matter after he was sentenced in the criminal case. Houge repeatedly stated during his April 11 testimony that X's assertion of the attorney-client privilege prevented him from talking about relevant matters.

The disciplinary hearing resumed on May 3, 2008. Because X's sentencing had been continued and then postponed, X would not waive his Fifth Amendment right. But X did waive the attorney-client privilege, and Houge told the referee that he would not require X's testimony. Following the hearing, the referee found that Houge violated Minn. R. Prof. Conduct 1.2(c) (2005) (assisting criminal or fraudulent conduct), 3.3(a)(1) (making false statements of fact to a tribunal), 3.3(a)(4) (2005) (failing to take reasonable measures to avoid fraud on the court), 4.1 (knowingly making false statement of fact or law in the course of representing a client), 5.3(a) (failure to give reasonable assurance that nonlawyer assistant's conduct conforms with lawyer's professional obligations), 5.3(c) (ordering or ratifying nonlawyer assistant's conduct that violates Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).[2] For these violations, the ref-

---

**2.** Because the conduct at issue occurred before the October 1, 2005 amendments to the Rules of Professional Conduct, citations to rules amended after that date are designated

eree recommended indefinite suspension with no right to petition for reinstatement for a minimum of two years. As set forth below, we conclude that the referee did not clearly err in concluding that Houge violated each of these rules and we adopt the recommended discipline.

## I.

 Because Houge ordered transcripts of the disciplinary hearing, *see* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), we review the referee's findings of fact and conclusions of law for clear error. *In re Peterson*, 718 N.W.2d 849, 853 (Minn.2006). At a disciplinary hearing, the Director bears the burden of proving misconduct by clear and convincing evidence. *In re Varriano*, 755 N.W.2d 282, 288 (Minn.2008); *In re Gillard*, 271 N.W.2d 785, 805 n. 3 (Minn.1978) (adopting " 'full, clear and convincing evidence' " standard for attorney discipline matters (internal citation omitted)). This standard requires a high probability that the facts are true. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn.1998); *see also Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn.1978) (noting that clear and convincing evidence is established by "more than a preponderance of the evidence, but less than proof beyond a reasonable doubt"). Although the referee's findings and conclusions are not binding in this case, we give them great deference, and we will uphold those that are supported by the record and are not clearly erroneous. *In re Varriano*, 755 N.W.2d at 288.

The referee concluded that Houge's conduct violated eight Rules of Professional Conduct. After a careful review of the record, we hold that the Director proved each violation by clear and convincing evidence and that the referee did not err by concluding that the record supports the enumerated violations.

 The referee concluded that Houge assisted a client in fraudulent conduct in violation of Rule 1.2(c) (prohibiting an attorney from assisting a client in "conduct that the lawyer knows is criminal or fraudulent"). The record establishes that X violated his probation by engaging in at least seven self-employed real estate and financial transactions, several of which transpired under Houge's "supervision." The November 5, 2002 employment agreement enabled X to continue to engage in the conduct that the court prohibited following X's theft-by-swindle conviction by securing work release for X and putting him in direct contact with property owners against court orders. The agreement between Houge and X therefore created a sham arrangement that allowed X to appear lawfully employed. Houge knew that X engaged in prohibited activities, having represented X while X testified to his transactions on February 18, 2003, in the Ramsey County District Court. Houge gained the benefit of X's deception, moreover, by receiving X's services in exchange for the debt X owed to Houge. Under these facts, the referee did not err by finding that Houge assisted a client in fraudulent or criminal conduct by creating a sham employment agreement in violation of Rule 1.2(c).[3]

with the year of the version in effect at the time of the conduct. Citations to rules that were not amended reference the current rule, without designation of the year.

**3.** Houge argues that the Director did not prove by clear and convincing evidence that Houge's October 30, 2002 letter—submitted

to the workhouse to help X obtain work release—supports a sham employment arrangement because the letter was not fraudulent. According to Houge, where he indicated in the letter that he "employed" X, he did not mean to imply a different arrangement than that created under the "independent contractor agreement" in effect at that time. The

■ The referee also found that Houge gave false and misleading statements to the court and omitted important facts from an affidavit filed with the court. The record supports that, at the February 24, 2004 restitution hearing in Hennepin County District Court, Houge mislead the court into believing that X received compensation in cash, rather than on a barter basis, which materially influenced the amount of income the court believed was available for X to put toward restitution. The referee did not err by finding that Houge made a false and misleading statement to the court in the course of representing a client, in violation of Rule 3.3(a)(1) ("A lawyer shall not knowingly ... make a false statement of fact to a tribunal.") and Rule 4.1 ("In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law.").

■ In addition, on April 17, 2003, Houge submitted an affidavit to the court to explain the terms of X's employment and the services X performed. Houge's affidavit did not disclose the commission arrangement or the real estate transactions in which X spoke directly with clients. We have recognized that the failure to disclose relevant information to the court may amount to an affirmative misrepresentation. *In re Zotaley*, 546 N.W.2d 16, 19 (Minn.1996) (citing Minn. R. Prof. Conduct 3.3 cmt). The referee therefore did not err in finding that the omissions from Houge's affidavit amounted to an af-

firmative misrepresentation in violation of Houge's duty of candor to the tribunal under Rule 3.3(a)(1).

■ The referee further found that Houge both submitted false evidence and failed to remedy X's statements to the court that Houge knew were false, in violation of Rule 3.3(a)(4) ("A lawyer shall not knowingly ... offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures."). The record supports the conclusion that Houge submitted false evidence in connection with X's probation in the form of two timesheets that Houge prepared and signed for X to provide to the workhouse as evidence of employment. These timesheets indicated that Houge paid X in cash and that Houge withheld taxes, when in fact Houge never paid wages to X and did not make withholdings. Thus, the referee did not err in finding that Houge submitted false evidence in violation of Rule 3.3(a)(4).[4]

■ Likewise, Houge violated Rule 3.3(a)(4) when he did not take reasonable remedial measures to correct X's false statement at the February 18, 2003 hearing in Ramsey County District Court, in which Houge represented X. At that hearing, X testified that he received a gross weekly pay, with a certain dollar amount available to be paid to the victim, even

Director argues that Houge's withholding of relevant details from this letter about X's employment shows that Houge intended to conceal the true nature of X's work. But the referee did not use this letter necessarily to support his conclusion that Rule 1.2(c) was violated. Instead, the only findings that the referee made with respect to Houge's letter stated the contents of the letter as well as terms of the "independent contractor agreement" not listed in the letter. The referee's

findings accurately describe both, and we cannot say that the referee erred in any findings related to Houge's October 30, 2002 letter.

4. Houge argues that the work release program was not mislead by these timesheets. Houge's argument is immaterial to the referee's finding that these timesheets were, in fact, false.

though X in fact received barter compensation. Houge argues that X's statement was not misleading to the court because the use of the word "pay" can include a barter agreement. Houge also argues that X's statement about the nature of X's income was immaterial to the proceeding because X intended to pay the amount at issue. But the form and amount of compensation were material to the amount of income available to pay the victim, which was at issue in the hearing. Houge knew X's statement was false, as he separately testified at his disciplinary hearing that he never paid X in cash wages. Rule 3.3(a)(4) requires an attorney who knows false evidence has been submitted to "take reasonable remedial measures." Houge took no such measures. We have said that an attorney's silence in the face of a client's untruthful testimony may be "tantamount to acquiescence to the deception." *In re Mack*, 519 N.W.2d 900, 902 (Minn.1994). The referee therefore did not err in finding that Houge's failure to correct the false statement violated Rule 3.3(a)(4).[5]

■■■ The referee also found that Houge failed to properly supervise X, his nonlawyer assistant, in violation of Rules 5.3(a) and (c). Rule 5.3(a) requires a lawyer to put into effect measures giving reasonable assurance that nonlawyer assistants will comply with the lawyer's professional obligations. In this case, the fact that X repeatedly violated conditions of his court-ordered probation under Houge's supervision is clear and convincing evidence that Houge did not institute measures to give reasonable assurance that X's conduct would comply with Houge's duty of candor to the court and obligation to avoid fraudulent transactions. The referee's conclusion that Houge violated Rule 5.3(a) therefore is supported by the record. Likewise, Rule 5.3(c)(1) prohibits a lawyer from ordering or ratifying conduct of a nonlawyer assistant that would violate the Rules of Professional Conduct if performed by a lawyer. Houge had knowledge of X's specific fraudulent conduct and thus ratified X's fraud that masked his probation violation from the court. The referee's conclusion that Houge violated Rule 5.3(c)(1) therefore is supported by the record.

■■■ Given Houge's fraudulent conduct established thus far, the referee further did not err in concluding that Houge violated Rule 8.4(c) because Houge "engage[d] in conduct involving dishonesty, fraud, deceit, or misrepresentation," as prohibited by the rule. The record also supports the referee's conclusion that, through the conduct found above, Houge "engage[d] in conduct that is prejudicial to the administration of justice" in violation of Rule 8.4(d).

Several additional referee findings supported by the record confirm the conclusion that Houge's conduct prejudiced the administration of justice in violation of Rule 8.4(d). For example, Houge was subpoenaed to produce documents relating to

---

5. The referee also found that, on April 17, 2003, X falsely stated that he was paid by check every week and that Houge, who represented X at that hearing, knew the statement was false but failed to correct it. Houge argues that X's statement was ambiguous and, in light of the court's order to commence an investigation, did not warrant correcting. The record supports that X's statement was false and Houge knew it to be false. But Rule 3.3(a)(4) requires lawyers to correct *material* evidence known to be false. Here, the issue before the court at the April 17 hearing was X's eligibility for electronic home monitoring. X's statement, that his "check" from Houge was always "exactly the same" was not material to the hearing such that Houge's failure to correct it violated Rule 3.3(a)(4). The referee therefore erred in this particular finding, but this error does not affect our ultimate conclusion that Houge otherwise violated Rule 3.3(a)(4).

the terms of X's employment for the October 28, 2004 probation revocation hearing. Houge told the court at that time that he had produced everything in his possession related to the subpoena, but Houge did not produce documents that later surfaced in the disciplinary proceeding and were responsive to the subpoena. The referee found Houge's explanations as to why the documents were not produced in response to the subpoena to be inconsistent and contradictory. Giving proper deference to the referee's credibility determination on this point, the referee did not err by finding that Houge purposely withheld subpoenaed documents. Such conduct obstructed the court's ability to understand the terms of the employment agreement and thus prejudiced the administration of justice in violation of Rule 8.4(a).

The referee also determined that Houge engaged in a "pattern of misconduct." The referee noted that the misconduct in this case involved multiple misrepresentations to multiple courts and other governmental entities over an extended period of time. We have previously found a pattern of misconduct where, over a two-year period, a bankruptcy lawyer made multiple statements to the court attempting to conceal a real estate transfer from his clients to himself. *In re Wentzell*, 656 N.W.2d 402, 406–08 (Minn.2003). We conclude that the conduct in this case similarly evidences a pattern of false statements and misrepresentations to various courts in order to conceal a sham agreement with a client. The referee therefore did not err in finding that Houge engaged in a pattern of misconduct.

Finally, the referee concluded that Houge made multiple efforts to delay the disciplinary process. The referee supported this conclusion with the following facts: (1) Houge responded to the Director's request-for-information letter by commencing a declaratory judgment suit in district court; (2) Houge refused the protective order the Director offered; (3) Houge signed a stipulation that he would not seek to postpone the November 19, 2007 panel hearing but then filed an action in this court to stay the proceeding; (4) Houge failed to appear for a court-scheduled telephone conference; and (5) Houge did not produce exhibits or a witness list on the day ordered, instead filing a motion to postpone the hearing. The record supports all of the above findings. The referee therefore did not err in concluding that Houge attempted to delay the disciplinary process. *See In re Thedens*, 557 N.W.2d 344, 349–50 (Minn.1997) (noting that failure to provide information or attend prehearing meetings of disciplinary procedure may warrant discipline in itself).

In summary, we hold that the referee did not err in concluding that Houge engaged in a pattern of misconduct and violated eight Rules of Professional Conduct.

## II.

We turn next to consider appropriate disciplinary action in this case. The referee recommended an indefinite suspension of Houge's license with no right to petition for reinstatement for a minimum of two years. Houge argues that his actions warrant no more than a reprimand. We evaluate each case of attorney discipline on an individual basis. *In re Wentzell*, 656 N.W.2d at 408. We do not take disciplinary action to punish, but instead impose discipline "to guard the administration of justice and to protect the courts, legal profession and the public." *In re Salmen*, 484 N.W.2d 253, 254 (Minn.1992). Four factors inform the appropriate discipline: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession."

*In re Nelson,* 733 N.W.2d 458, 463 (Minn. 2007). We additionally weigh aggravating and mitigating factors. *Id.* at 463–64.

### The Nature of the Misconduct

The nature of Houge's misconduct involves dishonesty and prejudice to the administration of justice. Houge's misconduct includes assisting a client in fraudulent conduct, knowingly making false statements of fact to the court and in the course of representation, knowingly offering false evidence, failing to supervise a nonlawyer assistant, and ratifying the assistant's unethical conduct.

### The Cumulative Weight of the Disciplinary Violations

We have said that "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser,* 679 N.W.2d 153, 160 (Minn.2004). In this case, Houge engaged in multiple acts that individually warrant some discipline. Houge's pattern of misconduct and baseless attempts to delay these disciplinary proceedings add weight to the cumulative impact of Houge's violations. *See, e.g., In re Wentzell,* 656 N.W.2d at 408–09 (stating attorney's numerous violations "warrant[ ] severe discipline"); *see also In re Nelson,* 733 N.W.2d at 464 (stating that noncooperation with the disciplinary process increases the severity of the disciplinary sanction); *In re Samborski,* 644 N.W.2d 402, 407 (Minn. 2002) (noting that noncooperation with discipline process may warrant indefinite suspension). In the face of the findings against him, Houge maintains that he did no wrong and has not expressed remorse. *See In re Nathan,* 671 N.W.2d 578, 585 (Minn.2003) (noting that failure to express remorse is an aggravating factor).

### The Harm to the Public and Legal Profession

The harm caused to the public and to the legal profession by Houge's conduct is the prejudice to the administration of justice. A lawyer's duty of candor to the court goes to the core of preserving the soundness of the justice system. *See In re Salmen,* 484 N.W.2d at 254 ("Our legal system depends on the truthfulness of the testimony of witnesses and false testimony strikes at the very heart of the administration of justice."). The integrity of our legal system depends first on the honesty and integrity of lawyers. *See In re Ruffenach,* 486 N.W.2d 387, 391 (Minn.1992); *In re Nilva,* 266 Minn. 576, 583, 123 N.W.2d 803, 809 (1963). The duties of honesty and integrity are owed both to the court, *see In re Ruhland,* 442 N.W.2d 783, 786 (Minn. 1989), and by right of expectation to the general public, *In re Ruffenach,* 486 N.W.2d at 391. A breach of these duties warrants severe discipline. *Id.*

Houge responds that if he caused any harm by his actions, that harm ended in April 2003, when X ostensibly left Houge's employ. Because any misconduct was limited to this one client, Houge also argues that the conduct will not be repeated. Finally, Houge maintains that no member of the public suffered actual loss from his relationship with X. While this is not a case in which an attorney took advantage of a client for personal gain, Houge did benefit from the sham transaction to the extent that Houge's law practice received X's services and X repaid a debt owed to Houge. In addition, when the Hennepin County District Court found that X had violated the conditions of his probation, the court noted that several members of the public were harmed by X's ability to engage in unsupervised transactions. We likewise conclude that, by facilitating X's

probation violation, Houge caused harm both to the public and the legal profession.

*Mitigating Factors*

Relevant mitigating factors include self-disclosure of misconduct and remorse. *See In re Wentzell*, 656 N.W.2d at 409. Neither applies to this case. In addition, this court considers an attorney's "unblemished record ... community service, and full cooperation with the Board" only if the ethical violations are not serious. *In re Franke*, 345 N.W.2d 224, 229 (Minn.1984) (internal citations omitted). We recognize that Houge's conduct is not aggravated by any prior history of professional discipline or substantive complaints against him. But the ethical violations in this case, going to the core of the integrity of the justice system, are serious. Accordingly, we find no factors to mitigate Houge's misconduct.

*Appropriate Discipline*

Severe discipline is warranted where a lawyer's conduct is dishonest and lacks integrity. *In re Ruffenach*, 486 N.W.2d at 391. But we also recognize that where an attorney is a sole practitioner, a suspension for any length of time is particularly harsh. *Id.* In light of the foregoing analysis, we hold that an indefinite suspension with no right to petition for reinstatement for a minimum of two years appropriately responds to the need to protect the administration of justice, the courts, the legal profession, and the public in this case.

## III.

Finally, we consider Houge's challenge to his disciplinary procedures on the grounds that the Director was disqualified by a conflict of interest and Houge's argument that his right to procedural due process was violated. We address each argument in turn.

### A.

Houge contends that an imputed conflict of interest disqualified the Director in this disciplinary proceeding. Houge points out that the Attorney General's office filed one of three ethics complaints submitted against him. Houge argues that, because the Attorney General has the authority to act as counsel for the Lawyers Professional Responsibility Board, the Board will overzealously pursue the Attorney General's complaint. Houge asks this court to appoint special counsel for all ethics complaints that originate in any division of the Attorney General's office.

The Attorney General is authorized to represent the Board under a broad statutory provision. Minn.Stat. § 8.06 (2008) ("The attorney general shall act as the attorney for all state officers and all boards or commissions created by law in all matters pertaining to their official duties."). But that office does not participate in the internal functions of the Board. For example, the Attorney General is not a party to disciplinary proceedings. The same is true in this case where, even though a lawyer from the Attorney General's office filed a complaint against Houge, the Attorney General's office was not involved in the investigation of Houge or the Director's petition against him. Houge has not presented any evidence to suggest that any relationship between the Board and Attorney General's office created a conflict of interest in this case requiring investigation by special counsel. We hold that special counsel was not necessary to investigate the disciplinary complaint in this case.

### B.

Houge argues that Rules 6(d) and 25, RLPR, as applied in this case, violate the procedural due process guarantees of

the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 7, of the Minnesota Constitution.[6] Houge contends that, because some of the ethics complaints against him were made by entities prosecuting his client, Rules 6(d) and 25, RLPR, effectively gave those entities *"carte blanche* access" to privileged communications between him and the client, to his attorney work product, and to client secrets. But Houge did not actually provide any documents pursuant to these rules. Nor does Houge allege that the Director provided any documents obtained in the disciplinary proceeding to the Attorney General's office or to the county attorney who was prosecuting Houge's client.

Moreover, with respect to attorney-client privileged documents, Houge claims that the privilege arises from his attorney-client relationship with X. But the attorney-client privilege belongs to the client. Minn.Stat. § 595.02, subd. 1(b) (2008). Here, X waived his privilege as to documents at the May 3, 2008 referee hearing. Houge's claim over any otherwise privileged documents became moot when X waived the privilege.

Finally, with respect to Houge's work product, Houge argues that the rules should be amended for cases such as his to prevent the possibility of forced disclosure of privileged materials. But nothing in Rule 6(d) requires the Director to provide the complainant with unfettered access to documents supplied by the lawyer to the Director's office under Rule 25. And Houge was offered a protective order that would have preserved the confidentiality of his attorney work product, which Houge declined. Houge has not demonstrated

how changes to the Rules would provide greater protections for attorney work product than a protective order would provide. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (stating that petitioner has the burden of demonstrating, among other things, the value of additional safeguards to prevent an erroneous deprivation). We therefore hold that Houge's right to procedural due process was not violated.

We indefinitely suspend respondent Benjamin S. Houge from the practice of law in Minnesota, effective 14 days from the date of filing of this opinion, with no right to petition for reinstatement for a period of two years from the date of filing of this opinion. Houge shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals) and shall pay $900 in costs pursuant to Rule 24, RLPR.

So ordered.

---

**6.** Rule 6(d), RLPR, requires the Director to "afford the complainant an opportunity to reply to the lawyer's response to the complaint." Rule 25, RLPR, requires a lawyer under investigation to cooperate with the Director by, among other things, "complying with reasonable requests" for the production of documents.