**In re Petition for DISCIPLINARY ACTION AGAINST Robert H. AITKEN, III, a Minnesota Attorney, Registration No. 301711.**

No. A09–1066.

Supreme Court of Minnesota.

July 29, 2010.

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subd. 2 (2008).

154

Martin A. Cole, Director, Cassie Hanson, Senior Assistant Director, Office of

Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Thomas S. Kuesel, Bemidji, MN, for respondent attorney.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition seeking disciplinary action against respondent Robert H. Aitken, III, alleging that Aitken violated Rules 3.4(a) (alteration of document), 4.1 (truthfulness), 8.1(b) (noncooperation), 8.4(c) (dishonesty) and (d) (conduct prejudicial to the administration of justice) of the Minnesota Rules of Professional Conduct (MRPC), and Rule 25 of the Minnesota Rules on Lawyers Professional Responsibility (RLPR), for forgery, knowingly making a false statement of fact to a tribunal in the course of representing a client and for failing to correct the false statement, and failing to cooperate with a disciplinary investigation. The referee concluded that Aitken's conduct violated Rules 8.4(c) and (d), MRPC, and Rule 25, RLPR, but not Rules 3.4(a), 4.1, or 8.1(b), MRPC. The referee recommended that Aitken be publicly reprimanded and be placed on probation for 2 years.[1]

The Director contends that the referee failed to make certain conclusions of law that were warranted by the facts, and contests the referee's finding of mitigating factors and recommended discipline. The Director requests that Aitken be indefinitely suspended from the practice of law for at least 6 months. Aitken contests two of the referee's findings of fact, but agrees with the referee's recommendation for discipline. We conclude that the referee

erred in failing to conclude that Aitken violated Rules 4.1 and 8.1(b), MRPC, and clearly erred with respect to two of the mitigating factors. We suspend Aitken from the practice of law for 90 days.

Aitken was admitted to practice law in Minnesota in October 2000. Aitken was in private practice from 2000 to 2007. From February 2007 until July 2008 Aitken worked as a public defender in the Ninth Judicial District. Shortly after Aitken began working as a public defender, Aitken took over representation of R.C., who was charged with trespass and obstruction in Beltrami County. R.C. was previously represented by another public defender in the Ninth Judicial District.

Several hearings were conducted in the R.C. matter beginning on March 21, 2007. Aitken appeared on behalf of R.C. at these hearings. After this first hearing, the prosecutor tendered a plea offer to Aitken providing that if R.C. pled guilty to the trespass charge, the obstruction charge would be dismissed. R.C. was not present at the hearing because Aitken failed to provide her notice of the hearing. Aitken agreed to the terms of the plea offer, but neither consulted with nor conveyed the sentencing terms to R.C. The second hearing occurred on April 24, 2007, during which the district court requested that Aitken file a plea petition reciting the parties' agreement. Additional hearings were held on May 9 and May 23, 2007. Aitken attended the hearings, but R.C. did not appear at any of these three hearings because Aitken failed to notify her of the court dates. As of May 23, 2007, no plea petition had been filed.

The district court scheduled another hearing for May 30, 2007. On May 24,

---

1. The referee's recommended discipline does not specify whether probation should be supervised.

Aitken mailed R.C. a plea petition together with correspondence, but again did not include notice of the May 30 hearing.[2] R.C. received the mailing on May 25 or May 26, but set it aside without looking at it. Aitken appeared at the May 30 hearing but R.C. did not appear. The district court again continued the matter to June 1, 2007.

One of the disputed findings of fact involves a telephone conversation that allegedly occurred between the May 30 and June 1 hearings between R.C.'s brother, A.C., and Aitken. Aitken claimed that A.C. told him during this conversation to sign the plea petition on R.C.'s behalf;[3] the referee, however, rejected Aitken's claim, although he did find that Aitken and A.C. had a telephone conversation.

On the day of the June 1 hearing, Aitken printed and signed R.C.'s name on the plea petition without her knowledge or consent and dated it May 24, 2007, to make it appear as if R.C. had signed and returned the plea petition to Aitken at an earlier date. Aitken also altered his handwriting to make it appear as if R.C. had signed the plea petition herself. Aitken signed the acknowledgment of counsel and dated it June 1, 2007. Aitken filed the plea petition and the district court approved it at the June 1 hearing. By forging R.C.'s signature on the plea petition and filing it with the district court, Aitken submitted a misleading document to the district court. Aitken did not forward a copy of the signed plea petition to R.C., provide her with any sentencing information, or otherwise make her aware of the sentencing conditions.

Approximately a year later, the Beltrami County Court Administrator sent R.C. a letter about her failure to pay various fines and costs imposed by the plea petition. R.C., who had no knowledge of the plea petition or plea conditions, requested a copy of the signed plea petition. R.C. did not recognize her signature on the plea petition. She contacted Kristine Kolar, the Chief Public Defender in the district, and informed her that the signature on the plea petition was not hers.

After reviewing the public defender and court files and interviewing Aitken and other witnesses, Kolar confronted Aitken about the forged signature on R.C.'s plea petition. Aitken admitted to Kolar that he signed the plea petition in R.C.'s name, but claimed he did so with her permission. Aitken also claimed that he signed R.C.'s name based on A.C.'s suggestion. The referee found both statements to be misleading and designed to conceal his forgery and neglect of R.C.'s matter.

By a *nunc pro tunc* order dated July 2, 2008, the district court vacated R.C.'s conviction order dated June 1, 2007. After Kolar spoke with R.C., a plea petition actually signed by R.C., agreeing to the same sentence, was entered by the district court on July 14, 2008.

---

**2.** The referee found that Aitken and R.C. had no contact prior to the May 30 hearing. It is not clear whether the referee's finding is based on the lack of any contact or the lack of contact specifically about hearing dates. But Aitken suggested—and R.C. agreed—during testimony that the two had a telephone conversation on May 24, 2007, during which Aitken informed R.C. that he would be sending to R.C. a copy of the plea petition. Therefore, while there was contact between Aitken and R.C., the record does not reveal that Aitken informed R.C. of any of the hearing dates.

**3.** This was the finding that the referee made based on the testimony of Kristine Kolar, the Chief Public Defender in the Ninth District. Kolar testified regarding her conversation with Aitken during her investigation. But during his testimony, Aitken claimed that A.C. did not give him "permission" to sign R.C.'s petition. Instead, he claimed (and continues to claim) that R.C. herself gave him permission to sign the petition.

In a letter dated July 8, 2008, Kolar filed a complaint with the Director regarding Aitken's conduct. The Director's Office mailed a notice of investigation to Aitken on July 17, 2008. Aitken failed to respond to the notice, and four other letters regarding the disciplinary investigation dated between August 25, 2008, and March 26, 2009. The Director also attempted to contact Aitken by telephone and left him a voicemail regarding pending charges of unprofessional conduct, which Aitken did not return.

On May 1, 2009, the Director sent Aitken notice of charges of unprofessional conduct, alleging that Aitken had violated Rules 3.4(a), 4.1, and 8.4(c) and (d), MRPC.[4] The petition alleged that Aitken committed forgery, made misleading statements, and failed to cooperate with the Director. The mailing also included notice of a pre-hearing meeting[5] on May 14, 2009. Aitken failed to attend the pre-hearing meeting, and failed to submit a timely answer regarding the charges of unprofessional conduct. The Director's

Office subsequently filed a petition for disciplinary action, charging Aitken with additional violations of Rule 8.1(b), MRPC, and Rule 25, RLPR,[6] for non-cooperation with the investigation. Based on the charges, the Director requested that Aitken be suspended from the practice of law.

The hearing on the charges of unprofessional conduct occurred on September 30, 2009. On November 12, 2009, the referee filed findings of fact and conclusions of law that Aitken violated Rules 8.4(c) and (d), MRPC, and Rule 25, RLPR, and a recommendation that Aitken receive a 30–day stayed suspension, be publicly reprimanded, and be placed on probation for 2 years. Aitken contests the referee's factual findings that: (1) he did not have permission to sign the plea petition; and (2) he was not remorseful for his actions. The Director disputes the referee's failure to make certain conclusions of law, findings of mitigating factors, and the referee's recommended discipline.

I.

At a disciplinary hearing, the Director bears the burden of proving miscon-

---

**4.** Rule 3.4(a), MRPC, provides: "A lawyer shall not ... unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

Rule 4.1, MRPC, provides: "In the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law."

Rule 8.4(c), MRPC, provides: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Rule 8.4(d), MRPC, provides: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

**5.** Rule 9(e), RLPR, provides, "The Director and the lawyer shall attend a pre-hearing meeting."

**6.** Rule 8.1(b), MRPC, provides: "[A] lawyer ... in connection with a disciplinary matter, shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

Rule 25(a), RLPR, provides: "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests." It further provides, "[v]iolation of this Rule is unprofessional conduct and shall constitute a ground for discipline." *Id.*

duct by clear and convincing evidence. *In re Houge*, 764 N.W.2d 328, 334 (Minn. 2009). Because the Director ordered a transcript of the disciplinary hearing, we are not bound by the referee's findings of fact and conclusions. *See* Rule 14(e), RLPR. Even where one of the parties orders a transcript, we give great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or on an attorney's credibility, demeanor, or sincerity. *In re Barta*, 461 N.W.2d 382, 382 (Minn.1990).

 We have previously stated that a referee's failure to make certain findings of fact is reviewed for clear error. *In re Grigsby*, 764 N.W.2d 54, 60 (Minn.2009). But we have not previously addressed a claim that a referee made sufficient factual findings, but failed to make conclusions of law based on those findings. We will review the referee's failure to make certain conclusions of law as a mixed question of law and fact. We will review the interpretation of the MRPC de novo, and review the application of the MRPC to the facts of the case for clear error, consistent with our traditional review of findings of fact and conclusions of law. *See In re Varriano*, 755 N.W.2d 282, 288 (Minn.2008) (stating that we uphold "a referee's findings and conclusions if they have evidentiary support in the record and are not clearly erroneous." (internal quotation marks omitted) (citation omitted)).

A.

██ We first address Aitken's claim that the referee clearly erred in finding that Aitken did not have permission to sign the plea petition. Aitken admits having violated Rules 8.4(c) and (d) of the MRPC but argues that, contrary to the referee's findings, Aitken had R.C.'s permission to

sign the plea petition on R.C.'s behalf. The referee rejected Aitken's claim that he had A.C.'s permission to sign the petition on R.C.'s behalf: "[T]he Referee rejects Respondent's claim that [A.C.] told him to sign [R.C.]'s name to the petition." Additionally, the referee found Aitken's claims that he had R.C.'s permission and that he signed R.C.'s name at A.C.'s suggestion to be "misleading statements designed to conceal [Aitken's] forgery and neglect of [R.C.]'s matter."

The testimonies of A.C., R.C., and Kristine Kolar support the following facts: (1) Aitken did not have R.C.'s permission to sign on her behalf; (2) A.C. did not suggest that Aitken sign on R.C.'s behalf; and (3) Aitken printed and signed R.C.'s name, and backdated the document to make it appear that R.C. signed the petition.

Aitken does not explain why he thought it necessary to alter his handwriting and signature to deceive the court if he believed he had R.C.'s permission to sign on her behalf. The following revealing exchange occurred between the Director's Office and Aitken at the disciplinary hearing:

Q: ... If you had [R.C.]'s permission to sign her name to the plea petition as of May 24, 2007, why didn't you sign your name that same date?

A: I don't know. I probably should have. I don't think the court would have accepted it. Believe me, Ms. Hanson, I wonder why—in fact, when Ms. Kolar was investigating, she asked me that same question and I didn't have an answer for her.

To a similar question, Aitken responded, "[b]ecause I didn't think the court was going to accept the petition for me signing it on her behalf," and thereafter admitted that he was "trying to deceive the court." The record overwhelmingly demonstrates that Aitken knew he could not sign his own

name on R.C.'s behalf, and Aitken therefore believed he had to forge R.C.'s signature to timely submit the plea petition to the court. We conclude that the referee's finding that Aitken did not have permission to sign the plea petition is not clearly erroneous.

## B.

Next, we turn to the Director's contention that the referee erred in failing to conclude that Aitken's conduct, as reflected in the referee's findings of fact, violated Rules 3.4(a), 4.1, and 8.1(b), MRPC. The referee made the following factual findings relating to Aitken's alteration of R.C.'s plea petition: (1) Aitken printed and signed R.C.'s name on the plea petition without her knowledge or consent; (2) Aitken backdated the petition to May 24, 2007, "so as to make it appear that [R.C.] had signed and returned the plea petition to him by mail at an earlier date"; (3) Aitken "submitted a misleading document to the district court"; and (4) Aitken made "misleading statements designed to conceal his forgery and neglect of [R.C.]'s matter" by arguing that he had R.C.'s permission to sign the petition. The referee concluded as a matter of law that Aitken violated Rules 8.4(c) (dishonesty) and (d) (conduct prejudicial to the administration of justice), MRPC, and Rule 25, RLPR (cooperation with the Director), but reached no conclusions as to Rules 3.4(a) and 4.1, MRPC.

### 1. Rules 3.4(a), 4.1, and 8.4(c) and (d), MRPC

Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to … engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Generally, "false representations made with an intent to deceive violate Rule 8.4(c)." *In re Czarnik*, 759 N.W.2d 217, 222 (Minn. 2009). Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to … engage in conduct that is prejudicial to the administration of justice." The Director also charged Aitken with violations of Rules 3.4(a) and 4.1, MRPC, which the referee did not address. Rule 3.4(a), MRPC, provides in part that an attorney may not "unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value." Rule 4.1, MRPC, provides, "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law."

After examining the findings of fact, it is not clear why the referee concluded as a matter of law that Aitken violated Rules 8.4(c) and (d), MRPC, for submitting a forged document to the district court, but not Rules 3.4(a) or 4.1, MRPC, which were charged based on the same misconduct. In similar cases involving a referee's findings that an attorney submitted a forged or otherwise false statement to a tribunal, we have upheld a referee's findings of fact and conclusions of law and have, in light of the facts of each case, jointly discussed all of these rules. *See, e.g., In re Winter*, 770 N.W.2d 463, 466–67 (Minn.2009) (affirming that respondent violated Rules 3.3(a)(1), 3.4(c), 4.1, and 8.4(c) and (d), MRPC, for filing a false motion with a tribunal); *Houge*, 764 N.W.2d at 335–37 (affirming that respondent violated in part Rules 3.3(a)(1), 4.1, 8.4(c) and (d), MRPC).[7]

---

7. In *In re Zotaley*, 546 N.W.2d 16, 19 (Minn. 1996), we individually discussed whether the attorney's misconduct violated Rules 4.1, 8.4(c), or 8.4(d). But that case is distinguishable from the one at hand. In that case, the referee found that by submitting a false insurance endorsement form on behalf of his client that he took from another client's file indicating additional coverage, respondent violated Rules 3.3(a)(4) and 8.4(d), MRPC, but did not

Based on the referee's extensive findings as to Aitken's misconduct, we conclude that Aitken violated Rule 4.1, MRPC. As to Rule 4.1, the referee found that Aitken "submitted a misleading document" and further, that he made "misleading statements." These findings are consistent with the language of Rule 4.1 prohibiting an attorney from "knowingly mak[ing] a false statement of fact or law," and our treatment of similar conduct in other cases as violations of Rule 4.1. Further, we have previously held that an attorney's forgery in the course of representing a client violates Rule 4.1, MRPC. *See In re Moeller*, 582 N.W.2d 554, 559 (Minn.1998) (holding that attorney's forgery of clients' signatures on retainer agreements violated Rule 4.1); *In re McNabb*, 577 N.W.2d 924 (Minn.1998) (holding that forgery of clients signature on settlement check violated Rule 4.1). We conclude that the referee erred in failing to conclude that Aitken violated Rule 4.1, MRPC.

But we reach a different conclusion as to Rule 3.4(a), MRPC. The referee found that Aitken printed and signed R.C.'s name on the plea petition, and backdated the petition with the intent to deceive. But the referee did not conclude that Aitken unlawfully altered a document. *See* Minn. R. Prof. Conduct 3.4(a). The referee's failure to conclude that Aitken violated Rule 3.4(a) is within the referee's discretion because Aitken did not alter the petition but instead falsely created and endorsed it. We therefore conclude that the referee did not err in failing to conclude that Aitken violated Rule 3.4(a), MRPC.

### 2. Rule 8.1, MRPC, & Rule 25, RLPR

In the findings of fact, the referee detailed Aitken's failure to respond to numerous letters and to otherwise cooperate in the Director's investigation, his failure to attend the pre-hearing meeting on the charges of misconduct, and his failure to issue a timely response to the Director's petition. The referee concluded that Aitken violated Rule 25, RLPR, but did not address the allegation of a violation of Rule 8.1(b), MRPC.

Rule 25, RLPR, provides in part:

(a) **Lawyer's Duty.** It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:

(1) Furnish designated papers, documents or tangible objects;

(2) Furnish in writing a full and complete explanation covering the matter under consideration;

(3) Appear for conferences and hearings at the times and places designated;

---

violate Rules 4.1 or 8.4(c), MRPC, because submission of the form "did not constitute deception, misrepresentation, or a false statement of fact." *Zotaley*, 546 N.W.2d at 18–19. We concluded that respondent also violated Rule 8.4(c) by submitting the endorsement form to opposing counsel prior to arbitration because he failed to "inform opposing counsel of the source of a critical document." *Zotaley*, 546 N.W.2d at 19. But we upheld the referee's conclusion that respondent did not violate Rule 4.1, because respondent had rea-

son to believe that his client had coverage consistent with the form from his other clients file and therefore did not "knowingly make a false statement of fact or law." *Zotaley*, 546 N.W.2d at 19; *see also id.* at 20 (concluding that respondent's submission of the insurance form to counsel and arbitration panel *during* proceedings violated Rules 8.4(c) and (d), but not Rule 3.3(a)(4) because although the form was "clearly misleading, it was not necessarily false").

(4) Execute authorizations and releases necessary to investigate alleged violations of a conditional admission agreement.

Rule 8.1(b), MRPC, provides in part, "a lawyer ... in connection with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

■ We have repeatedly held that non-cooperation with a disciplinary investigation violates Rule 8.1(b), MRPC (renumbered in 2005; previously designated as Rule 8.1(a)(3), MRPC), and Rule 25, RLPR. Failure to respond at "any stage of a disciplinary proceeding constitutes a violation of Rule 25, RLPR, and Rule 8.1(b), MRPC." *In re Karlsen,* 778 N.W.2d 307, 312 (Minn.2010); *accord In re Thedens,* 557 N.W.2d 344, 350 (Minn.1997) (holding that a failure to appear at a pre-hearing meeting violates both Rule 8.1(a)(3), MRPC, and Rule 25, RLPR); *In re Engel,* 538 N.W.2d 906, 906 (Minn.1995) ("Respondent's conduct in failing to respond to complaints of unprofessional conduct and in failing to cooperate with any of the Director's efforts to investigate those complaints constitutes a violation of Rules 8.1(a)(3) and 8.4(d), [MRPC], as well as Rule 25[,] RLPR."). *Cf. Admonition Regarding A.M.E.,* 533 N.W.2d 849, 851 (Minn.1995) (stating that non-cooperation may violate Rule 8.1(a)(3), MRPC, and Rule 25, RLPR, but affirming discipline for violation of Rule 8.4(b), MRPC, without concluding as a matter of law that the attorney violated either or both of the non-cooperation rules).

At the same time, the Director may not have charged other respondent's with violations of both Rule 8.1(b), MRPC, and Rule 25, RLPR. But where the Director has charged attorney's with violations of both rules, we have generally analyzed the rules together and agreed that misconduct that violated one rule also violated the other. *See, e.g., In re Erickson,* 653 N.W.2d 184, 190–91 (Minn.2002) (record supported referee's conclusion that attorney violated both rules); *Thedens,* 557 N.W.2d at 350 (finding violation of both rules, where Director charged attorney with violations of both); *Engel,* 538 N.W.2d at 906 (attorney's conduct violated both rules). *Cf. In re Anderson,* 759 N.W.2d 892, 897 (Minn.2009) (upholding referee's conclusion that attorney violated only of Rule 8.1(b), where the Director did not assert a violation of Rule 25, RLPR).

It is unclear based on the referee's findings of fact and conclusions of law why the referee determined that there was a violation of Rule 25, RLPR, but not Rule 8.1(b), MRPC. In light of the referee's findings of fact supporting the conclusion that Aitken violated Rule 25, RLPR, based on Aitken's failure to respond to the notice of investigation and subsequent letters, failure to answer charges, and failure to attend the pre-hearing meeting, we hold that Aitken also violated Rule 8.1(b), MRPC.

## II.

■ Lastly, we determine the appropriate discipline for Aitken. The referee recommended that Aitken receive a stayed suspension of 30 days, be publicly reprimanded, and be placed on probation for 2 years. Aitken agrees with the referee's recommendation, but the Director requests that we indefinitely suspend Aitken for a period of no less than 6 months.

■ Although we place significant weight on the referee's recommendation, we retain ultimate responsibility for selecting the appropriate sanction. *Anderson,* 759 N.W.2d at 898. The purpose of discipline for professional misconduct is not to punish the attorney, but rather to protect the public, to protect the judicial system,

and to deter future misconduct by the disciplined attorney as well as by other attorney's. *In re Plummer*, 725 N.W.2d 96, 98 (Minn.2006); *In re De Rycke*, 707 N.W.2d 370, 373 (Minn.2006). To determine the appropriate discipline, we consider four factors: (1) the nature of the misconduct, (2) the cumulative weight of the rule violations, (3) the harm to the public, and (4) the harm to the legal profession. *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). We also consider any mitigating or aggravating circumstances. *See Houge*, 764 N.W.2d at 338. Although prior decisions guide and aid us in enforcing consistent discipline, *In re Orren*, 590 N.W.2d 127, 129 (Minn.1999), we impose discipline based on the unique facts and circumstances of each case, *In re Redburn*, 746 N.W.2d 330, 334 (Minn.2008).

▮ Aitken's misconduct involves a single instance of forgery, submission of the forged document to a court, and non-cooperation with the Director's disciplinary investigation arising out of this single instance of misconduct. Aitken's conduct has caused prejudice to the administration of justice and has thus harmed both the public and the legal profession. "'An attorney who deliberately deceives the court is guilty not only of obstructing the administration of justice but also of subverting that loyalty to the truth without which he cannot be a lawyer in the real sense of the word.'" *Winter*, 770 N.W.2d at 468 (quoting *In re Nilva*, 266 Minn. 576, 583, 123 N.W.2d 803, 809 (1963)). Aitken has no prior disciplinary history, but his non-cooperation with the Director's investigation increases the severity of the disciplinary sanction. *See Nelson*, 733 N.W.2d at 464.

▮ We "typically impose some period of suspension from the practice of law" in "cases of forgery." *In re Arbeiter*, 764 N.W.2d 814, 814 (Minn.2009); *see also In re Brost*, 763 N.W.2d 637 (Minn.2009)

(minimum of 9 months); *In re Yang*, 755 N.W.2d 733 (Minn.2008) (minimum of 6 months); *In re Boyd*, 430 N.W.2d 663, 666–67 (Minn.1988) (6 months); *In re Holmay*, 399 N.W.2d 564 (Minn.1987) (30 days); *In re Kaminsky*, 407 N.W.2d 670 (Minn.1987) (30 days); *In re Danna*, 403 N.W.2d 239, 240–41 (Minn.1987) (90 days).

▮ Besides Aitken's conduct, we consider aggravating and mitigating factors. The referee did not note any aggravating factors. We consider Aitken's non-cooperation an aggravating factor. Aitken's non-cooperation increases the severity of the disciplinary sanction. Although non-cooperation "warrants indefinite suspension on its own," it also increases the sanction imposed when accompanied by other misconduct. *In re Rhodes*, 740 N.W.2d 574, 579 (Minn.2007); *see also Nelson*, 733 N.W.2d at 464. Aitken's non-cooperation was absolute—he did not respond to the Director's notice of investigation or four letters demanding response from Aitken, and failed to attend the pre-hearing meeting.

The referee found as mitigating factors that: (1) Aitken had no disciplinary history; (2) Aitken was unfamiliar with certain rules and procedures; and (3) Aitken did not have R.C.'s cooperation to resolve her case; and (4) there was no harm to R.C. as a result of Aitken's misconduct. The referee concluded that remorse was not a mitigating factor because Aitken was not remorseful.

▮ Contrary to the referee's findings, we do not consider Aitken's lack of disciplinary history a mitigating factor. Although we consider an attorney's disciplinary history as an aggravating factor, *see Winter*, 770 N.W.2d at 468, an attorney's lack of disciplinary history is not a mitigating factor but is instead the absence of an aggravating factor. *Accord In re Berg*,

741 N.W.2d 600, 605 (Minn.2007). We therefore reject consideration of Aitken's lack of disciplinary history as a mitigating factor.

 Additionally, we have never considered either a lack of familiarity with the rules and procedures, or the failure of a client to cooperate with an attorney's request, as a mitigating factor in the context of any attorney discipline case (forgery/false statement context or otherwise), and we decline to do so now. We do not believe that any attorney could reasonably have believed that court rules provided for or permitted forgery of a client's signature on a document offered to the court. Aitken had already been practicing for 4 years and had his license to practice law for nearly 7 years at the time he forged R.C.'s signature. The referee's finding of a lack of familiarity with the rules and procedures is unsupported by the record, and we therefore conclude that it was clearly erroneous.

 We do however, consider as a mitigating factor the lack of harm to R.C. We have generally "considered the absence of harm to clients to be a mitigating factor in discipline cases." *In re Overboe*, 745 N.W.2d 852, 867 (Minn.2008). With the assistance of Kristine Kolar, R.C. accepted the same plea agreement previously offered by the prosecutor.

 Finally, we conclude that the referee did not clearly err by failing to find Aitken's remorse a mitigating factor. *See In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006) ("Deference to the referee is particularly appropriate when the findings are based on a respondent's demeanor, credibility, or sincerity."). Aitken expressed remorse for the consequences of his misconduct, but not remorse for his actual misconduct under the Minnesota Rules of Professional Conduct. When asked if he

was sorry for what he did, Aitken responded, "Extremely. It hurt me to hear [R.C.] suffered, what she went through in this thing today. I didn't know that." However, Aitken continuously justified his misconduct by citing a concern that a warrant would be issued for R.C.'s arrest if he did not submit a plea petition, and Aitken insisted that he had R.C.'s permission to sign on her behalf, despite overwhelming evidence to the contrary. *See Houge*, 764 N.W.2d at 338 ("In the face of the findings against him, [respondent] maintains that he did no wrong and has not expressed remorse."). But even if we were to assume that Aitken had R.C.'s permission to sign the plea petition on her behalf, Aitken's forgery and subsequent false statement through his submission of the petition to the court was misconduct and a violation of Rules 4.1, 8.4(c) and (d), MRPC. Based on our review of the record, we hold that the referee's finding that Aitken failed to express remorse for his misconduct is not clearly erroneous.

Based on the record before us, we order that:

1. Effective 14 days from the date of filing of this order, respondent Robert H. Aitken, III, is suspended from the practice of law in the State of Minnesota for a period of 90 days.

2. Aitken shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. Aitken shall pay the Director $900 in costs, plus disbursements, pursuant to Rule 24, RLPR.

4. Aitken will be reinstated to the practice of law pursuant to Rule 18(f), RLPR, after the expiration of his suspension, provided that no less than 15 days before the expiration of the suspension period, he files with the Clerk of Appellate Courts

and serves upon the Director an affidavit establishing that he has complied with all conditions imposed on his reinstatement.

5. Within 1 year from the date of filing of this decision, Aitken shall file with the Clerk of Appellate Courts and serve upon the Director of the Office of Lawyers Professional Responsibility proof of successful completion of the professional responsibility portion of the state bar examination. Failure to do so shall result in automatic re-suspension, pending successful completion of the examination, pursuant to Rule 18(e)(3), RLPR.

6. Upon reinstatement, Aitken shall be placed on unsupervised probation for a period of 2 years. While on unsupervised probation, Aitken shall comply with the Minnesota Rules of Professional Conduct and shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention.

It is so ordered.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.